STRATTON'S INDEPENDENCE, LIMITED, *v.* HOWBERT, COLLECTOR OF INTERNAL REVENUE.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 457.   Argued October 21, 1913.—Decided December 1, 1913.

The Corporation Tax Law of August 5, 1909, c. 6, 36 Stat. 11, 112, applies to mining corporations.

Income, within the meaning of the Corporation Tax Law of 1909, includes the proceeds of ores mined by a corporation from its own premises.

A corporation mining ores from its own premises is not entitled to deduct from the proceeds of the ores mined, by way of depreciation under the Corporation Tax Law of 1909, the difference between the gross proceeds of the sales of ores during the year and the moneys expended in extracting, mining, and marketing the ores.

The Corporation Tax Law of 1909, having been enacted before the ratification of the Sixteenth Amendment, was not in any proper sense an income tax law; but was an excise tax upon the conduct of business in a corporate capacity, measured by the income, with certain qualifications prescribed by the act itself.

The process of mining ores is, in a sense, equivalent in its results to a manufacturing process, and is "business" within the Corporation Tax Law of 1909.

Income may be defined as the gain derived from capital, from labor, or from both combined.

In fixing the income by which the excise on conducting business should be measured, Congress has power to fix the gross income even though such income involved a wasting of the capital as in mining ores.

The Corporation Tax Law deals with corporations engaged in actual business transactions and presumably conducted according to business principles.

Whatever may be the proper method of computing depreciation under the Corporation Tax Law by reason of taking ore from the premises of a mining corporation, the rules applicable to liability of trespassers for taking ore have only a modified application thereto.

Where the case is here under § 239, Judicial Code, and the whole record has not been sent up, this court, under Rule 37, deals with the facts as certified and not otherwise; under such circumstances it answers only the questions of law certified and does not go into questions of fact or of mixed law and fact.

THE facts, which involve the construction of the Corporation Tax Act of August 5, 1909, c. 6, 36 Stat. 11, 112, and its application to mining corporations are stated in the opinion.

*Mr. William V. Hodges*, with whom *Mr. A. A. Hoehling, Jr.*, and *Mr. John R. Van Derlip* were on the brief, for Stratton's Independence, Limited:

Mining corporations are not included in general classifications of corporations, as such classifications are used in legislation. The fact that the natural enjoyment of a mining estate results in the waste of the estate, and the fact that the true value thereof is impossible of determination, have caused such properties to be considered as anomalous, and to be so treated in the general incorpora-

tion laws of the mining States, and the decisions of the courts relating thereto, in the laws establishing systems of taxation in the mining States, and by the decisions under the Federal Bankruptcy Act of 1898.

Special provision for the taxation of mining claims has been made in the following instances: Colorado Rev. Stat., 1908, §§ 5617–5627, as amended, Laws 1913, pp. 565–567; Montana Rev. Pol. Code, 1907, §§ 2500, 2563–2571; Nevada Rev. Laws, 1912, §§ 3687–3709; Idaho Rev. Codes, §§ 1863–1872; Utah Comp. Laws, 1907, §§ 2504, 2566–2573; Washington Laws, 1897, p. 155; New Mexico Comp. Laws, 1897 §§ 1560, 1756; Wyoming Comp. Stat. 1910, §§ 2449–2454; Oklahoma Laws, 1907–1908, c. 71, Art. 2; Laws 1909, c. 38; Art. 2, Comp. Laws, §§ 7702, 7703, 7706.

The courts recognize the same necessity for special treatment of this class of properties. *Taxation of Mining Claims,* 9 Colorado, 635; *Pilgrim Mining Co.* v. *Teller County,* 32 Colorado, 334; *Iron Silver Co.* v. *Henderson,* 12 Colorado, 369; *Foster* v. *Hart Mining Co.,* 52 Colorado, 459.

In a number of mining States the statutes make express exceptions, applicable to mining corporations, in relation to the conveyance of mining properties in exchange for capital stock, regardless of the true value thereof, and for disposition of the same on liquidation. Colorado Rev. Stat., 1908, §§ 975–983; Montana Rev. Civ. Code, 1907, §§ 3824, 3860, 3896, 4403–4412; North Dakota Rev. Code, 1899, §§ 3154–3161; Nevada Rev. Laws, 1912, §§ 1200–1202, 1216–1218, 1330–1340; Kerr's California Civ. Code, §§ 586–590; Lord's Oregon Laws, §§ 6713–6715; Washington, Ballinger's Ann. Code, 1897, §§ 4280–4284; and see decisions demonstrating the necessity of special treatment of mining premises. *Leschen Rope Co.* v. *Allen,* 187 Fed. Rep. 977; *In re South Mountain Mining Co.,* 14 Fed. Rep. 347; *Ross* v. *Mining Co.,* 36 Minnesota,

38; *In re Elk Park Mining Co.*, 101 Fed. Rep. 422; *In re Rollins Mining Co.*, 102 Fed. Rep. 982; *In re Keystone Coal Co.*, 109 Fed. Rep. 872; *In re Woodside Coal Co.*, 105 Fed. Rep. 56.

In the administration of the Corporation Tax Law the Commissioner of Internal Revenue at first recognized that the provisions thereof do not fit the conditions of a mining corporation, and attempted to make over the act of Congress by administrative legislation. T. D. 1742, December 15, 1911.

Mining corporations are not engaged in carrying on business within the meaning of the act. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107.

Merely existing as a corporation and exercising corporate franchises does not necessarily amount to the "carrying on of business," within the intent of the act. *McCoach* v. *Minehill Ry. Co.*, 228 U. S. 295; *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; see also *Clark* v. *Sidway*, 142 U. S. 682; *Farrand* v. *Gleason*, 56 Vermont, 633; *Jordan* v. *Soule*, 79 Maine, 590; *Harris* v. *de Raismes*, 38 Atl. Rep. (N. J.) 637; *Nash* v. *Mitchell*, 71 N. Y. 199; *Childers* v. *Neely*, 47 W. Va. 70; *Judge* v. *Braswell*, 13 Bush (Ky.), 67.

The application of the act to mining corporations results in a tax upon the capital itself, while, as applied to corporations having an income, as distinguished from capital, it does not result in a tax upon capital. This inequality of operation is inherently unjust. Laying aside all questions of constitutional limitations, the act should not be so construed as to accomplish this unjust result, if there be a fair and reasonable construction to be given the act which would avoid such an unjust result. *Washington &c. R. R. Co.* v. *Coeur d'Alene Ry. Co.*, 160 U. S. 77, 101; *Bate Refrigerator Co.* v. *Sulzberger*, 157 U. S. 1.

The proceeds of mining operations do not represent values created by, or incident to, the business activities

of such a corporation, and cannot be a bona fide measure of a tax leveled at such corporate business activities.

The measurement of the tax by the excess of the receipts for ore marketed over the cost of mining, extracting and marketing the same is equivalent to a tax upon the usual and ordinary incidents of ownership of such property— such a direct tax as is prohibited by the Constitution— and, further, is such a tax as Congress, by the provisions for the deduction of depreciation provided in the act, expressly intended to avoid. *Knowlton* v. *Moore,* 178 U. S. 41, 81–82.

The proceeds of mining operations result from a conversion of the capital represented by real estate into capital represented by cash, and are in no true sense income. The act cannot apply to a corporation which has no income.

The act ought not to be construed to include mining corporations unless it clearly appears that Congress intended to include them. Duties are never imposed on the citizen upon vague or doubtful interpretations. *Hartranft* v. *Wiegemann,* 121 U. S. 609, 616; *Pennsylvania Steel Co.* v. *New York City Rys. Co.,* 198 Fed. Rep. 774; *Taylor* v. *Treat,* 153 Fed. Rep. 656; *Parkview Building Assn.* v. *Herold,* 203 Fed. Rep. 876, 880.

The fact that mining corporations come within the letter of the act, if true, does not conclude the argument; for, if mining corporations be not within the spirit of the act, it is not applicable to them. *Brewer* v. *Blougher,* 14 Pet. 178; *United States* v. *Kirby,* 7 Wall. 482; *Heydenfeldt* v. *Daney Mining Co.,* 93 U. S. 634, 638; *Holy Trinity Church* v. *United States,* 143 U. S. 457.

The proceeds of ores mined by a corporation from its own premises are not income within the meaning of the aforementioned act of Congress. T. D. 1742.

For a correct definition of income, see *Cornell University* v. *Davenport,* 30 Hun, 177, 180; *Thorne* v. *de Breteuil,* 86 App. Div. 405, 416; *Wilcox* v. *County Commissioners,*

103 Massachusetts, 544; *Sargent Land Co.* v. *Von Baum-bach*, in the District Court of the United States, for the District of Minnesota, decided in August, 1913; *Gray* v. *Darlington*, 15 Wall. 63; *Spooner* v. *Phillips*, 62 Connecticut, 62, 68; *Foster* v. *Hart Mining Co.*, 52 Colorado, 459, 467; *Smith* v. *Hooper*, 95 Maryland, 16, 26; *Vinton's Appeal*, 99 Pa. St. 434; *In re Mount Alto Iron Co.*, 174 Pa. St. 430; *Mercer* v. *Buchanan*, 132 Fed. Rep. 501, 507; *In re Armitage* (1893), 3 Ch. Div. 337, 347.

If the proceeds from ore sales are to be treated as income, a mining corporation is entitled to deduct the value of such ore in place and before it is mined as depreciation within the meaning of the Corporation Tax Law. *Leschen-Rope Co.* v. *Allen*, 187 Fed. Rep. 977; *In re South Mountain Mining Co.*, 14 Fed. Rep. 327; *United States* v. *Nipissing Mines Co.*, 202 Fed. Rep. 803.

*Mr. Assistant Attorney General Graham* for Howbert, Collector:

The Corporation Tax Act applies to mining corporations and the proceeds of ore mined by a corporation on its own premises are income within the meaning of the act. *Gay* v. *Baltic Mining Co.*, 220 U. S. 107; *Mitchell* v. *Clark Iron Co.*, 220 U. S. 107.

This result also follows from the nature of capital and income in relation to mining companies. When capital is by labor changed from a fund into a flow, it necessarily changes its character from capital to income. In the case of a mine the mineral as it lies in the ground is capital, but when it is extracted, converted into ore, and sold the result is a flow, and income has accrued.

The rule that corporations whose capital is intended to provide a permanent means of carrying on business must first charge off depletion in plant or stock has no application to a corporation whose sole purpose is to invest its capital in a specific piece of property like a mine, and

afterwards to consume the property or extract its value at a profit. Morawetz, Corp., 2d ed., § 442.

All the judicial authority is to the same effect. *Clegg* v. *Rowland*, L. R. 3 Eq. 368; *Daly* v. *Beckett*, 24 Beav. 114; *Eley's Appeal*, 103 Pa. St. 300; *McClintock* v. *Dana*, 106 Pa. St. 386; *Raynolds* v. *Hanna*, 55 Fed. Rep. 783; *Shoemaker's Appeal*, 106 Pa. St. 392.

The payment of dividends by a mining company out of the proceeds of ore sold is not a payment out of capital. *Excelsior Water Co.* v. *Pierce*, 90 California, 131; *Lee* v. *Neuchatel Asphalte Co.*, 41 Ch. Div. 1.

The fact that the operation of a mine may decrease its valuation by exhaustion does not prevent the profits of the business of a mining corporation not devoted to dividends from being properly denominated surplus.

It has been expressly held by the Supreme Court of Pennsylvania that oil companies and mining companies have income within the meaning of an income-tax act. *Commonwealth* v. *The Ocean Oil Co.*, 59 Pa. St. 61; *Commonwealth* v. *Penn. Gas Coal Co.*, 62 Pa. St. 241.

A mining company is not entitled to deduct the value in place of ore mined during the year as depreciation within the meaning of the Corporation Tax Act. *Alianza Co.* v. *Bell* (1904), 2 K. B. 666; 1905, 1 K. B. 184; (1906) A. C. 18; *Coltness Iron Co.* v. *Black*, 6 App. Cas. 315.

Depreciation to be allowed as a deduction under the Corporation Tax Act must be actually paid, and not merely estimated.

For other authorities in support of these contentions see *London County Council* v. *The Attorney General*, 1901, A. C. 26; *People* v. *Roberts*, 156 N. Y. 585; *State* v. *Evans*, 99 Minnesota, 220; *Stevens* v. *Hudson's Bay Co.*, 101 Law Times, 96; *Waring* v. *Mayor &c. of Savannah*, 60 Georgia, 93.

By leave of court *Mr. William D. Guthrie* filed a brief as *amicus curiæ*.

By leave of court *Mr. Charles S. Thomas, Mr. W. H. Bryant, Mr. George L. Nye, Mr. William P. Malburn, Mr. William Story* and *Mr. William Story, Jr.,* also filed a brief as *amici curiæ.*

MR. JUSTICE PITNEY delivered the opinion of the court.

This action was brought in the District Court of the United States by Stratton's Independence, Limited, a British corporation carrying on mining operations in the State of Colorado upon mining lands owned by itself, to recover certain moneys paid under protest for taxes assessed and levied for the years 1909 and 1910 under the provisions of the Corporation Tax Act, being § 38 of the act of August 5, 1909 (36 Stat. 11, 112, c. 6). The case was tried upon an agreed statement of facts, from which it appears, as to the year 1909, that the company extracted from its lands during the year certain ores bearing gold and other precious metals, which were sold by it for sums largely in excess of the cost of mining, extracting, and marketing the same, that the gross sales amounted to $284,682.85, the cost of extracting, mining, and marketing amounted to $190,939.42, and "the value of said ores so extracted in the year 1909, when in place in said mine and before extraction thereof, was $93,743.43." With respect to the operations of the company for the year 1910, the agreed facts were practically the same, except as to dates and amounts. It does not appear that the so-called "value of the ore in place," or any other sum, was actually charged off upon the books of the company as depreciation. Upon this state of facts each party moved the court for a directed verdict, at the same time presenting for consideration certain questions of law, and among them the following:

"1. Is the value of the ore in place that was extracted

from the mining property of the plaintiff during the years in question properly allowable as depreciation in estimating the net income of the plaintiff subject to taxation under the Act of Congress of August 5, 1909 (36. Stat., ch. 6, p. 11)?

"2. Is the right to such credit affected by the fact that the plaintiff does not carry such items on its books in a depreciation account."

The court directed a verdict in favor of the plaintiff with respect to certain amounts that were undisputed and concerning which no question is now raised; but directed a verdict in favor of the defendant with respect to so much of the taxes paid as represented the value in place of the ore that was extracted during the years in question, overruling the contention that such value was properly allowable as depreciation in estimating the net income of the plaintiff. To this ruling proper exceptions were taken. The resulting judgment having been removed by writ of error to the Circuit Court of Appeals, that court certifies that the following questions of law are presented to it, the decision of which is indispensable to a determination of the cause, and upon which it therefore desires the instruction of this court:

"I. Does Section 38 of the Act of Congress, entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909 (36 Stat., p. 11), apply to mining corporations?

"II. Are the proceeds of ores mined by a corporation from its own premises income within the meaning of the aforementioned Act of Congress?

"III. If the proceeds from ore sales are to be treated as income, is such a corporation entitled to deduct the value of such ore in place and before it is mined as depreciation within the meaning of Section 38 of said Act of Congress?"

The provisions of § 38 are set forth in the margin.[1]

The principal grounds upon which it is contended that the questions ought to receive answers favorable to the company are expressed in various forms, viz., that mining corporations are *sui generis*, because the

---

[1] SEC. 38. That *every corporation*, joint stock company or association, *organized for profit and having a capital stock represented by shares*, and every insurance company, now or hereafter organized under the laws of the United States or of any State or Territory of the United States or under the acts of Congress applicable to Alaska or the District of Columbia, or now or hereafter *organized under the laws of any foreign country and engaged in business in any State or Territory of the United States* or in Alaska or in the District of Columbia, *shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation*, joint stock company or association, or insurance company, equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax hereby imposed; or *if organized under the laws of any foreign country, upon the amount of net income over and above five thousand dollars received by it from business transacted and capital invested within the United States*, and its Territories, Alaska, and the District of Columbia during such year, exclusive of amounts so received by it as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax hereby imposed; *provided, however*, that nothing in this section contained shall apply to labor, agricultural or horticultural organizations, or to fraternal beneficiary societies, orders, or associations operating under the lodge system, and providing for the payment of life, sick, accident, and other benefits to the members of such societies, orders or associations, and dependents of such members, nor to domestic building and loan associations, organized and operated exclusively for the mutual benefit of their members, nor to any corporation or association organized and operated exclusively for religious, charitable, or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual.

Second. *Such net income shall be ascertained by deducting from the gross amount of the income of such corporation*, joint stock company or association, or insurance company, *received within the year from all*

natural enjoyment of mining lands necessarily results in the waste of the estate; that the true value thereof is impossible of accurate determination, and hence mining corporations are not included in general classifications of corporations as such classifications are employed in other legislation; that the provisions of § 38 do not fit

sources, (*first*) *all the ordinary and necessary expenses actually paid within the year out of income* in the maintenance and operation of its business and properties, including all charges such as rentals or franchise payments, required to be made as a condition to the continued use or possession of property; (second) *all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any,* and in the case of insurance companies the sums other than dividends, paid within the year on.policy and annuity contracts and the net addition, if any, required by law to be made within the year to reserve funds; (third) interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation, joint stock company or association, or insurance company, outstanding at the close of the year, and in the case of a bank, banking association or trust company, all interest actually paid by it within the year on deposits; (fourth) all sums paid by it within the year for taxes imposed under the authority of the United States or of any State or Territory.thereof, or imposed by the government of any foreign country as a condition to carrying on business therein; (fifth) all amounts received by it within the year as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax hereby imposed; *provided,* that *in the case of a corporation,* joint stock company or association, or insurance company, *organized under the laws of a foreign country, such net income.shall be ascertained by deducting from the gross amount of its income received within the year from business transacted and capital invested within the United States* and any of its Territories, Alaska, and the District of Columbia, (first) *all the ordinary and necessary expenses actually paid within the year out of earnings* in the maintenance and operation of its business and property within the United States and its Territories, Alaska, and the District of Columbia, including all charges such as rentals or franchise payments required to be made as a condition to the continued use or possession of property; (second) *all losses actually sustained within the year in business conducted by it within the*

the conditions of a mining corporation; that such corporations are not in truth engaged in "carrying on business" within the meaning of the Act; that the application of the Act to them results in a tax upon the capital, while as applied to other corporations it does not result in such a tax, the result being an inequality of operation that is

---

*United States* or its Territories, Alaska, or the District of Columbia not compensated by insurance or otherwise, *including a reasonable allowance for depreciation of property, if any,* and in the case of insurance companies the sums other than dividends, paid within the year on policy and annuity contracts and the net addition, if any, required by law to be made within the year to reserve funds; (third) interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness, not exceeding the proportion of its paid-up capital stock outstanding at the close of the year which the gross amount of its income for the year from business transacted and capital invested within the United States and any of its Territories, Alaska, and the District of Columbia bears to the gross amount of its income derived from all sources within and without the United States; (fourth) the sums paid by it within the year for taxes imposed under the authority of the United States or of any State or Territory thereof; (fifth) all amounts received by it within the year as dividends upon stock of other corporations, joint stock companies or associations, and insurance companies, subject to the tax hereby imposed. In the case of assessment insurance companies the actual deposit of sums with state or territorial officers, pursuant to law, as additions to guaranty or reserve funds shall be treated as being payments required by law to reserve funds.

Third. There shall be deducted from the amount of the net income of each of such corporations, joint stock companies or associations, or insurance companies, ascertained as provided in the foregoing paragraphs of this section, the sum of five thousand dollars, and said tax shall be computed upon the remainder of said net income of such corporation, joint stock company or association, or insurance company, for the year ending December 31, 1909, and for each calendar year thereafter; and *on or before the first day of March, 1910, and the first day of March in each year thereafter, a true and accurate return under oath or affirmation of its president, vice-president, or other principal officer, and its treasurer or assistant treasurer, shall be made by each of the corporations,* joint stock companies or associations, and insurance companies, *subject.*

inherently unjust; that the proceeds of mining operations do not represent values created by or incident to the business activities of such a corporation, and therefore cannot be a *bona fide* measure of a tax leveled at such corporate business activities; that the proceeds of mining

---

*to the tax imposed by this section,* to the collector of internal revenue for the district in which such corporation, joint stock company or association, or insurance company, has its principal place of business, or, *in the case of a corporation,* joint stock company or association, or insurance company, *organized under the laws of a foreign country, in the place where its principal business is carried on within the United States,* in such form as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe, setting forth, (first) the total amount of the paid-up capital stock of such corporation, joint stock company or association, or insurance company, outstanding at the close of the year; (second) the total amount of the bonded and other indebtedness of such corporation, joint stock company or association, or insurance company at the close of the year; *(third) the gross amount of the income of such corporation,* joint stock company or association, or insurance company, received during such year *from all sources, and if organized under the laws of a foreign country the gross amount of its income received within the year from business transacted and capital invested within the United States* and any of its Territories, Alaska, and the District of Columbia; also the amount received by such corporation, joint stock company or association, or insurance ʼcompany, within the year by way of dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax imposed by this section; (fourth) the total amount of all the ordinary and necessary expenses actually paid ·out of earnings in the maintenance and operation of the business and properties of such corporation, joint stock company or association, or insurance company, within the year, stating separately all charges such as rentals or franchise payments required to be made as a condition to the continued use or possession of property, and if organized under the laws of a foreign country the amount so paid in the maintenance and operation of its business within the United States and its Territories, Alaska, and the District of Columbia; *(fifth) the total amount of all losses actually sustained during the year* and not compensated by insurance or otherwise, *stating separately any amounts ·allowed for depreciation of property,* and in the case of insurance companies the sums other than

operations result from a conversion of the capital represented by real estate into capital represented by cash, and are in no true sense income; and that to measure the tax by the excess of receipts for ore marketed over the cost of mining, extracting and marketing the same, is

---

dividends, paid within the year on policy and annuity contracts and the net addition, if any, required by law to be made within the year to reserve. funds; *and in the case of a corporation,* joint stock company or association, or insurance company, *organized under the laws of a foreign country, all losses actually sustained by it during the year in business conducted by it within the United States* or its Territories, Alaska, and the District of Columbia, not compensated by insurance or otherwise, *stating separately any amounts allowed for depreciation of property,* and in the case of insurance companies the sums other than dividends, paid within the year on policy and annuity contracts and the net addition, if any, required by law to be made within the year to reserve fund; (sixth) the amount of interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation, joint stock company or association, or insurance company, outstanding at the close of the year, and in the case of a bank, banking association or trust company, stating separately all interest paid by it within the year on deposits; or in case of a corporation, joint stock company or association, or insurance company, organized under the laws of a foreign country, interest so paid on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the proportion of its paid-up capital stock outstanding at the close of the year, which the gross amount of its income for the year from business transacted and capital invested within the United States and any of its Territories, Alaska, and the District of Columbia, bears to the gross amount of its income derived from all sources within and without the United States; (seventh) the amount paid by it within the year for taxes imposed under the authority of the United States or any State or Territory thereof, and separately the amount so paid by it for taxes imposed by the government of any foreign country as a condition to carrying on business therein; (eighth) the net income of such corporation, joint stock company or association, or insurance company, after making the deductions in this section authorized. All such returns shall as received be transmitted forthwith by the collector to the Commissioner of Internal Revenue.

equivalent to a direct tax upon the property, and hence unconstitutional. Next, assuming the proceeds of ore are to be treated as income within the meaning of the Act, it is yet insisted that such proceeds result solely from the depletion of capital, and are therefore deductible as depreciation under the provisions of the Act.

We do not think it necessary to follow the argument through all its refinements. The pith of it is that mining corporations engaged solely in mining upon their own premises have but one kind of assets, and that in the ordinary use of them the enjoyment of the assets and the wasting thereof are in direct proportion, and proceed *pari passu;* and hence that a mining corporation is not engaged in business, properly speaking, but is merely occupied in converting its capital assets from one form into another, and that a tax upon the doing of such a business, where the tax is measured by the value of the property owned by the corporation, would be in excess of the constitutional limitations that existed at the time of the passage of the act of 1909, as laid down in *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; *S. C.*, 158 U. S. 601.

The peculiar character of mining property is sufficiently obvious. Prior to development it may present to the naked eye a mere tract of land with barren surface, and of no practical value except for what may be found beneath. Then follow excavation, discovery, development, extraction of ores, resulting eventually, if the process be thorough, in the complete exhaustion of the mineral contents so far as they are worth removing. Theoretically, and according to the argument, the entire value of the mine, as ultimately developed, existed from the beginning. Practically, however, and from the commercial standpoint, the value—that is, the exchangeable or market value—depends upon different considerations. Beginning from little, when the existence, character and extent of

the ore deposits are problematical, it may increase steadily or rapidly so long as discovery and development outrun depletion, and the wiping out of the value by the practical exhaustion of the mine may be deferred for a long term of years. While not ignoring the importance of such considerations, we do not think they afford the sole test for determining the legislative intent.

As has been repeatedly remarked, the Corporation Tax Act of 1909 was not intended to be and is not in any proper sense an income tax law. This court had decided in the *Pollock Case* that the income tax law of 1894 amounted in effect to a direct tax upon property, and was invalid because not apportioned according to population as prescribed by the Constitution. The act of 1909 avoided this difficulty by imposing not an income tax, but an excise tax upon the conduct of business in a corporate capacity, measuring, however, the amount of tax by the income of the corporation, with certain qualifications prescribed by the Act itself. *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107; *McCoach* v. *Minehill Co.*, 228 U. S. 295; *United States* v. *Whitridge*, (decided at this term, *ante*, p. 144).

For this and other obvious reasons we are little aided by a discussion of theoretical distinctions between capital and income. Such refinements can hardly be deemed to have entered into the legislative purpose. Of course, if it were demonstrable that to read the Act according to its letter would render it unconstitutional, or glaringly unequal, or palpably unjust, a reasonable ground would exist for construing it according to its spirit rather than its letter. But in our opinion the Act is not fairly open to this criticism. It is not correct, from either the theoretical or the practical standpoint, to say that a mining corporation is not engaged in business, but is merely occupied in converting its capital assets from one form into another. The sale outright of a mining property might be fairly described as a mere conversion of the capital from land

into money.   But when a company is digging pits, sinking shafts, tunneling, drifting, stoping, drilling, blasting, and hoisting ores, it is employing capital and labor in transmuting a part of the realty into personalty, and putting it into marketable form.   The very process of mining is, in a sense, equivalent in its results to a manufacturing process. And, however the operation shall be described, the transaction is indubitably "business" within the fair meaning of the act of 1909; and the gains derived from it are properly and strictly the income from that business; for "income" may be defined as the gain derived from capital, from labor, or from both combined, and here we have combined operations of capital and labor.   As to the alleged inequality of operation between mining corporations and others, it is of course true that the revenues derived from the working of mines result to some extent in the exhaustion of the capital.   But the same is true of the earnings of the human brain and hand when unaided by capital, yet such earnings are commonly dealt with in legislation as income.   So it may be said of many manufacturing corporations that are clearly subject to the act of 1909, especially of those that have to do with the production of patented articles; although it may be foretold from the beginning that the manufacture will be profitable only for a limited time, at the end of which the capital value of the plant must be subject to material depletion, the annual gains of such corporations are certainly to be taken as income for the purpose of measuring the amount of the tax.

It seems to us that the first two questions certified must be answered in the affirmative principally for two reasons. First, because mining corporations are within the general description of § 38, which comprises *"every corporation,* joint stock company or association *organized for profit and having a capital stock represented by shares,* . . . and *engaged in business* in any state or territory of the United

States;" and, secondly, because the Act *specifies those classes of corporations that are to be exempt* from its operation, and mining corporations are not among them. Those exempted are labor, agricultural or horticultural organizations, fraternal beneficiary societies, orders or associations operating under the lodge system, domestic building and loan associations, corporations and associations organized and operated for religious, charitable, or educational purposes, etc. Moreover, the section imposes "a special excise tax with respect to the carrying on or doing business by such corporation," etc. That mining companies are doing business, within the fair intent and meaning of this clause, seems to us entirely plain, for reasons already given. The conduct of such business results in profit, for it cannot be seriously contended that the ores are not worth more at the mine mouth than they were worth in the ground, *plus* the cost of mining. Corporations engaged in such business share in the benefits of the Federal Government, and ought as reasonably to contribute to the support of that Government as corporations that conduct other kinds of profitable business.

As to what should be deemed "income" within the meaning of § 38, it of course need not be such an income as would have been taxable as such, for at that time (the Sixteenth Amendment not having been as yet ratified), income was not taxable as such by Congress without apportionment according to population, and this tax was not so apportioned. Evidently Congress adopted the income as the measure of the tax to be imposed with respect to the doing of business in corporate form because it desired that the excise should be imposed, approximately at least, with regard to the amount of benefit presumably derived by such corporations from the current operations of the Government. In *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 165, it was held that Congress in exercising the right to tax a legitimate subject of taxation as a franchise

or privilege, was not debarred by the Constitution from measuring the taxation by the total income, although derived in part from property which, considered by itself, was not taxable. It was reasonable that Congress should fix upon gross income, without distinction as to source, as a convenient and sufficiently accurate index of the importance of the business transacted. And from this point of view, it makes little difference that the income may arise from a business that theoretically or practically involves a wasting of capital.

Moreover, Congress evidently intended to adopt a measure of the tax that should be easy of ascertainment and simply and readily applied in practice. The Act prescribed that the tax should be "equivalent to one per centum upon the entire net income over and above $5,000 received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations," etc., or, with respect to foreign corporations, "upon the amount of net income over and above $5,000 received by it from business transacted and capital invested within the United States," etc. And the net income was to be ascertained by taking, first, the "gross amount of the income of such corporation . . . received within the year from all sources," or, in the case of foreign corporations, "from business transacted and capital invested within," etc., and deducting therefrom losses sustained, interest paid, etc. And the return was to be made under oath by the president and treasurer, or other officers having like duties, indicating in the clearest manner that it was to set forth *data* that with proper accounting would appear upon the books of the corporation. We have no difficulty, therefore, in concluding that the proceeds of ores mined by a corporation from its own premises are to be taken as a part of the gross income of such corporation. Congress no doubt contemplated that such corporations, amongst others, were doing business

with a wasting capital, and for such wastage they made
due provision in declaring that from the gross income there
should be deducted (*inter alia*) "all losses actually sus-
tained within the year," including "a reasonable allow-
ance for depreciation of property, if any," etc.

This brings us to the third question, which is whether
such a mining corporation is entitled to deduct the value
of ore in place and before it is mined, as depreciation
within the meaning of § 38. This question, however, is
to be read in the light of the issue that is presented to the
Circuit Court of Appeals for determination, as recited in
the certificate. From that certificate it appears that the
case was submitted to the trial court and a verdict directed
upon an agreed statement of facts, and in that statement
the gross proceeds of the sale of the ores during the year
were diminished by the moneys expended in extracting,
mining, and marketing the ores, and the precise difference
was taken to be the value of the ores when in place in
the mine.

That we do not misconstrue the certificate, and that, on
the contrary, the parties advisedly adopted this definition
of "value of the ore in place," is apparent not only from
the form of the agreed statement of facts, but from the
arguments presented here in behalf of the plaintiff. The
contention is that if the proceeds of ore sales are to be
treated as income, the value of the ore in place and before
it is mined is to be deducted as depreciation, and that
such value is to be arrived at by the process indicated.
Briefs submitted in behalf of *amici curiæ* have suggested
other modes for determining depreciation; but plaintiff
stands squarely upon the ground indicated by the certifi-
cate, as the following excerpts from the brief will show:
"Assuming, then, that the proceeds of ore are to be
treated as income within the meaning of the Act, we sub-
mit that *such proceeds result solely from depletion of capital,*
and are therefore deductible as depreciation under the

provisions [of the Act] set out above. . . . And we contend that if a part of the capital assets are removed and sold, the property, as it originally stood, is actually depreciated in value to the exact extent of such removal. As an actual matter of experience, the original cost of the property must, from its very nature, be highly speculative. The values in the property are invisible, and impossible of determination. They may be worth many times the cost, or they may be worth nothing. . . . The value of the ore in sight does represent a part of the capital; but there is no warrant for limiting it to this amount, nor is there any warrant for limiting the value of ore bodies thereafter discovered in any case to a standard fixed before their discovery, and therefore, of necessity, purely conjectural. . . . The true capital of a mining corporation is the true value of the minerals within the limits of its properties, irrespective of developed ore bodies or those known to exist at any one moment. Investigation or development may demonstrate the existence of values theretofore unknown, but this results in no addition to the actual capital. It remains the same as it was before. . . ." And again, "With every dollar's worth removed, the land from which it is taken contains that much less of value; the corporation owns precisely that much less real property than it possessed before; for every dollar of cash received it relinquishes an equivalent amount of ore in place, and makes no gain or profit by the exchange."

Reading these extracts in connection with what is contended respecting the first and second questions—to the effect that mining corporations are not "doing business," but are merely converting their capital assets from one form into another—it is clear that a definition of the "value of the ore in place" has been intentionally adopted that excludes all allowance of profit upon the process of mining, and attributes the entire profit upon the mining

operations to the mine itself. In short, the parties propose to estimate the depreciation of a mining property attributable to the extraction of ores according to principles that would be applicable if the ores had been removed by a trespasser.

It is at the same time obvious that any method of stating the account that excludes all element of gain from the process of mining must, through one process or another, exempt mining companies from liability to tax under the act of 1909 with respect to their mining operations. And so, an affirmative answer to the third question as propounded would be the same in effect as an affirmative answer to the first or the second. For it is a matter of little or no moment whether it is to be said (a) that mining corporations are not "engaged in business" at all, or (b) that they are engaged in business but the proceeds of ore mined are not income, or (c) that such proceeds are income, but that there must be allowed as depreciation all that part of the proceeds which remains after paying the bare outlays of the business. In either case mining corporations would be exempt from the tax.

In our opinion, there are at least two insuperable obstacles in the way of returning an affirmative answer to the third question as certified.

In the first place, it is fallacious to say that, whatever may have been the original cost of a mining property or the cost of developing it, if in fact it afterwards yield ores aggregating many times its original cost or market value, this result merely proves and at the same time measures the intrinsic value that existed from the beginning. We are here seeking the correct interpretation and construction of an act of legislation that was, at least, designed to furnish a practicable mode of raising revenue for the support of the Government, and to do this in part by imposing annual taxes upon corporations organized for profit and by measuring the amount of the contribution

to be required from each corporation according to its annual income. The Act deals with corporations engaged in actual business transactions and presumably conducted according to ordinary business principles. It was of course contemplated that the income might be derived from the employment of property in business, and that this property might become more or less exhausted in the process; and because of this, a reasonable allowance was to be made for depreciation of it, if any. But plainly, we think, the valuation of the property and the amount of the depreciation were to be determined not upon the basis of latent and occult intrinsic values, but upon considerations that affect market value and have their influence upon men of affairs charged with the management of the business and accounting of corporations that are organized for profit and are engaged in business for purposes of profit.

And, secondly, assuming the depletion of the mineral stock is an element to be considered in determining the reasonable depreciation that is to be treated as a loss in the ascertainment of the net income of a mining company under the Act, we deem it quite inadmissible to estimate such depletion as if it had been done by a trespasser, to whom all profit is denied.

With respect to the proper measure of damages where ore has been unlawfully mined by one person upon the land of another, there is much conflict of authority. Different modes of determining the damages have been resorted to, dependent sometimes upon the form of the action, whether trespass or trover; sometimes upon whether the case arose at law or in equity; and often upon whether the trespass was willful or inadvertent. See *Wooden-ware Co. v. United States*, 106 U. S. 432, and cases cited; *Benson Mining Co. v. Alta Mining Co.*, 145 U. S. 428, 434; *Pine River Logging Co. v. United States*, 186 U. S. 279, 293; *United States v. St. Anthony R. Co.*, 192 U. S. 524, 542; *Martin v. Porter* (1839), 5 M. & W. 351,

352; *Jegon* v. *Vivian* (1871), L. R. 6 Ch. 742, 760; 40 L. J. Ch. 389; 19 W. R. 365; *Livingstone* v. *Rawyards Coal Co.* (1880), 5 App. Cas. 25, 34; 42 L. T., N. S., 334; *Coal Creek M. & M. Co.* v. *Moses*, 15 Lea (Tenn.), 300; 54 Am. Rep. 415; *Winchester* v. *Craig*, 33 Michigan, 205.  See also English and American Notes to *Martin* v. *Porter*, and *Jegon* v. *Vivian*, 17 Eng. Rul. Cas. 873, 876, etc.  We are not at this time concerned with this vexed question, beyond saying that the rules applicable to trespassers can have only a modified application to the case of a mine owner conducting mining operations upon its own lands, where the question is,—What is the income derived from the business?—and the incidental question,—What is the reasonable depreciation, if any, of the mining property?

What has been said necessitates a negative answer to the third question as certified.  And we shall not go further into the question of depreciation.  The case comes here under § 239, Judicial Code (derived from § 6 of the Evarts Act, March 3, 1891, 26 Stat. 826, 828, c. 517). It is established that in the exercise of this jurisdiction this court, unless it see occasion to require the whole record to be sent up for consideration, is to make answer respecting the several propositions of law that are certified, and is not to go into questions of fact, or of mixed law and fact.  Our Rule 37 requires that the certificate shall contain a proper statement of the facts upon which the questions of law arise, and we deal with the facts as thus certified, and not otherwise.  *Graver* v. *Faurot*, 162 U. S. 435, 437; *Cross* v. *Evans*, 167 U. S. 60, 63; *United States* v. *Union Pacific Railway*, 168 U. S. 505, 512; *Emsheimer* v. *New Orleans*, 186 U. S. 33; *Cincinnati, Hamilton Railroad* v. *McKeen*, 149 U. S. 259.

It would therefore be improper for us at this time to enter into the question whether the clause, "a reasonable allowance for depreciation of property, if any" calls for an allowance on that account in making up the tax, where

no depreciation is charged in practical bookkeeping; or the question whether depreciation, when allowable, may properly be based upon the depletion of the ore supply estimated otherwise than in the mode shown by the agreed statement of facts herein; for to do this would be to attribute a different meaning to the term "value of the ore in place" than the parties have put upon it, and to instruct the Circuit Court of Appeals respecting a question about which instruction has not been requested, and concerning which it does not even appear that any issue is depending before that court.

> *The first and second questions certified will be answered in the affirmative; and the third question will be answered in the negative.*

MR. CHIEF JUSTICE WHITE, MR. JUSTICE MCKENNA, and MR. JUSTICE HOLMES dissent with respect to the answer made to the third question.