Appeal of **THE BREVOORT HOTEL COMPANY.**     Docket No. 139.

A lessee of property for a term longer than its estimated life with no obligation on lessee to reconstruct, and where lessee has made no capital investment therein, is not entitled to a deduction for exhaustion, wear and tear thereof.

Submitted November 15, 1924; decided December 3, 1924.

*E. Barrett Prettyman, Esq.,* and *Herman A. Fischer, Esq.,* for the taxpayer.

*Arthur H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

The appeal is from a proposed additional income and profits tax of $6,307.10 for the fiscal year ended June 30, 1919, arising from the disallowance of a depreciation deduction. The facts were stipulated by the parties.

FINDINGS OF FACT.

The taxpayer is an Illinois corporation and during the fiscal year ended June 30, 1919, operated a hotel in the city of Chicago. On December 1, 1905, it leased for 99 years from Alexander D. Hannah and David Hogg the land upon which it operates, together with the 13-story building thereon and its equipment. The building was at that time in the course of construction at a cost to the lessors of more than $900,000. The rent originally provided and paid was $60,000 annually. On July 1, 1917, the lease was amended but the

term was not changed, and among other things the lessee taxpayer was required to pay at that time a sum of $500,000, after which the rent was $30,000 a year. The lessee has thus far continued to occupy the premises under the lease. The estimated useful life of the building at the time of its completion in 1905 was 40 years and of the equipment 20 years.

The lessors on their tax return did not deduct any allowance for exhaustion, wear and tear, and obsolescence of this building or its equipment. The taxpayer took such a deduction, although it did not bear the cost of the building and equipment or any part thereof, either originally or at any time prior to the end of the taxable year in question. The Commissioner disallowed the deduction and as a result has determined a deficiency of $6,307.10.

The original lease and the amended lease are in evidence, but it is not necessary to set them forth in full in our findings. We shall quote only the provisions material to the decision. Together they provide that the lessee shall pay all taxes; it shall keep the premises insured for the benefit of the lessor and if they are destroyed the insurance money shall be used for the erection of a new building; upon failure to do so the lessor shall have the insurance money; the lessee shall keep the premises in good repair and condition, as follows:

The lessee covenants and agrees as follows: To keep the building and other improvements now on said land, and such as may hereafter be erected or placed thereon, in good and safe repair and condition, and the sidewalks about said premises, and the vaults thereunder, and the alley or alleys adjacent thereto in good and safe repair and condition, at its own expense, at all times during said term; and further covenants and agrees not to remove any building or other improvement from said premises (except as herein otherwise provided), but the same, and all additions or improvements thereto, shall be and, as soon as erected or made, become part of the realty and pass to the lessors on the termination of this lease as hereinafter provided; and further covenants and agrees that loss or damage to the building now on said land, at any time after the signing of these presents, shall not affect the operation of this lease, but in such event it will repair or rebuild the same or erect a new building thereon, as hereinbefore agreed, within 18 months next after such loss or damage (excepting delays occasioned as hereinafter provided), and that in making such repairs or improvements, or erecting such new building, it will in all respects comply with all the laws, ordinances, and requirements then in force relating thereto; and further, that it will, at its own expense and at all times hereafter during the term of this lease, fully and promptly keep and protect any building on said premises, and the walls thereof, from injury or damage occasioned, or that might be occasioned, by the construction of any wall or walls, or building or buildings, on land adjacent or contiguous to the premises hereby demised.

The lessee may remodel or change the building, provided it does not decrease the value; it may also remove the present building and erect a new building at a cost of not less than $350,000, as follows:

The lessee may, at any time during the term of this lease, take down, remove, or destroy any building that is now, or may hereafter be, erected or placed on the premises hereby demised, for the purpose of replacing said building with another building upon the premises hereby demised, which said new building shall cost and be worth not less than three hundred and fifty thousand dollars ($350,000), and shall be constructed within 18 months after commencing such taking down, removal, or destruction: *Provided, however,* That previous to such taking down, removal, or destruction of such building or buildings, the lessee shall deposit with Chicago Title & Trust Co., as trustees hereunder, in cash or in merchantable securities, a sum of money equal to the estimated cost of the building to be erected in place thereof, but not less than the sum of three hundred and fifty thousand dollars ($350,000).

The time for rebuilding may be extended by reason of delay due to an act of providence; mechanics' liens may be protested and litigated; and the new building may be so constructed as to join the building next door; the amount of the rent shall be a lien upon the lessee's interest and estate in the premises; the lessee shall maintain the property in accordance with law and municipal ordinances; may assign, and the assignee shall assume all of the provisions; the leasehold may be mortgaged; no assignment may be made while the lessee is in default; failure of covenants results in forfeiture; notice of default shall be given to the mortgagee; the lessee waives demand for possession by default; and condemnation of part of the premises results in an apportionment of the rent and condemnation of all terminates the lease.

All the buildings and improvements on the premises at the termination of the lease shall belong to the lessor, as follows:

It is expressly covenanted and agreed between the parties hereto that all buildings and improvements, now and that may hereafter be placed upon said premises, together with all boilers, furnaces, heating and elevator apparatus and other fixtures, decorations, and appurtenances in, or upon, said premises and the building thereon, except personal or movable property of said lessee not connected with the operation of said building, or of any subtenant of said lessee, shall, upon the termination of this lease, by lapse of time or otherwise, be and become the absolute property of the lessors; and the lessee covenants and agrees that at the expiration of this lease, by lapse of time or otherwise, it will yield up said premises and the building and improvements thereon, in good condition and repair, including the boilers and other fixtures aforesaid, to the lessors, without any compensation therefor, and that in the event of the termination of this lease at any time before the expiration of the said 99 years, for default in or breach of any of the covenants or agreements herein, as hereinbefore provided, all buildings, and parts thereof, fixtures, appurtenances, and improvements aforesaid, in, on, or about said premises at the time of such default or breach, shall belong to and be the property of the said lessors, their heirs or assigns, and no compensation whatever therefor shall be allowed to the lessee, its successors, or assigns.

Dispossession through no fault of the lessee results in proportionate abatement of the rent; the lessee will bear the expense of defending the possession; and covenants run with the land.

### DECISION.

The deficiency determined by the Commissioner of $6,307.10 for the fiscal year ended June 30, 1919, is approved.

### OPINION.

STERNHAGEN: The taxpayer is the lessee of a hotel building in Chicago under a lease made in 1905 for a term of 99 years. When the lease was made the building was in course of construction and was soon completed. With its equipment it cost over $900,000. Originally the rental was $60,000 annually; later in 1917, by an amended lease, the lessee paid an advance rental of $500,000, thereafter continuing to pay only $30,000 annually. The amendments to the lease in 1917 are not necessary for statement here, because they do not affect the decision. The treatment of the $500,000 is not here in question. The taxpayer took an annual deduction of a reasonable allowance for the exhaustion of the leasehold.

The taxpayer claims the right to deduct an amount representing the exhaustion of the building over its stipulated 40-year life and the equipment over its stipulated 20-year life, and the Commissioner has denied this right because the taxpayer does not own the property and has made no capital investment therein. We are of opinion that the disallowance was proper.

The lease gives the lessee the use and occupation of the building at a fixed rental, all of which is properly deductible and is being deducted annually. The lessee is required to maintain the property in good condition and repair, and presumably it is permitted to deduct the cost of such repairs when paid or incurred. This does not mean that it must overcome ordinary wear and tear. Without express provision, the lessor must bear that burden, and there is no such provision. The lessee insures for the benefit of the lessor, and presumably the cost of such insurance is also being permitted as a deduction. Fulfilling these obligations, the lessee may continue in possession for 99 years without additional expenditure. We are able to find nothing in the lease which compels the taxpayer or its sub-tenant or assignee to erect a new building or to make improvements in the present building. To be sure, the lease gives it the right to do so if it so elects, but such contractual right is not a duty. The voluntary election to provide for a new building which it is not compelled to erect can not give rise to a deductible charge against income. Right here seems to lie the primary fallacy of the taxpayer's appeal. It argues throughout upon the premise that it has a legal obligation to erect a building or to return the premises to the lessor with a building thereon—a premise which has no foundation in the lease or elsewhere in the stipulated facts. We are unable to find such an obligation, and hence so much of the argument as is based upon it must fall.

In *Ostheimer's Appeal*, 1 B. T. A. 18, this Board had before it the case of a lessee who was required to restore the property to the lessor in as good condition as when received, and who sought to deduct the amounts alleged to be reasonably necessary to accomplish that purpose. The deduction was disallowed, and we said:

> The taxpayer had no title to the physical property which he used in his business under the lease. He merely had a leasehold estate. This gave him only the use and possession of the property under the terms and conditions stated in the lease. The allowance of a deduction on account of the wear and tear and exhaustion of property, commonly known as depreciation, is based upon the principle of allowing a taxpayer a return of the capital invested in his business before subjecting his earnings therefrom to tax. Recognition is given to the fact that physical assets are constantly being reduced in value on account of wear, tear, and exhaustion thereof in the business. A taxpayer, however, is permitted to have returned to him only the capital which he has invested. What the lessor or any other person than the taxpayer had invested in the property is immaterial. It has no necessary relation to the investment of the lessee.

The taxpayer urges that this principle, which its counsel characterize as the return-of-capital-investment theory, is archaic and not in accord with modern business and sound accounting. The argument is made that since the useful life of the property may reasonably be estimated to expire in a period within the limits of the term of the leasehold, it is the lessee who in effect is suffering from the exhaustion; that since it is a reasonable business certainty that the lessee

will find it necessary to rebuild the property, it is the lessee's investment which is being exhausted, the expenditure being made at the end of the present life of the building instead of at the beginning. But, as has been said, the building is not the property of the taxpayer; it is not required to replace it; and if it chooses to do so, it will not be the present building which it pays for but the new building which it erects. Then and not until then will it have made a capital investment.

In this view we find support in what the Supreme Court has said in *Von Baumbach* v. *Sargent Land Company*, 242 U. S. 503; *Stratton's Independence* v. *Howbert*, 231 U. S. 399; and the district court in *Baldwin Locomotive Works* v. *McCoach*, 215 Fed. 967.

In *Knoxville* v. *Knoxville Water Company*, 212 U. S. 14, the Supreme Court approved depreciation as a charge against current earnings, and said:

> It (the company) is entitled to see that from earnings the value of the property invested is kept unimpared, so that, at the end of any given term of years, the original investment remains as it was at the beginning.

Modern writers on income taxes and accountancy have also expressed this view.[1] We therefore can not say that the formula of using the taxpayer's original cost or capital outlay (leaving aside the cases involving value on March 1, 1913) as the basis upon which his annual depreciation allowance shall be computed should now be discarded.

The taxpayer suggests that we should adopt a theory which it styles the asset-consumption theory, by which the allowance is measured according to the proportion of assets consumed in the tax year by the taxpayer without regard to their ownership. It likens the exhaustion to the consumption of coal in the business. It can no longer be denied that physical property wears out in operation just as coal is consumed, or that the statute was intended to provide for such exhaustion. But not abstractly. It is only by relating the exhaustion to a particular taxpayer that it becomes a deduction. If in his business A consumes the coal of B, he has no deductible fuel cost; and if he exhausts B's building it adds nothing to *his* cost of operation. The income tax is a personal tax, levied as to each person with regard to his own affairs. To say, as counsel here urge, that the deduction for exhaustion is not confined to the taxpayer's property because the statute does not expressly say so, ignores the entire rationale of the income tax and would subject the act to hopeless confusion. All the items which go to make up income are necessarily those of the taxpayer. In setting forth gross income, Congress did not say gross income *of the taxpayer;* the expense deduction does not say *of the taxpayer;* interest and taxes are not expressly said to be those paid *by the taxpayer;* losses are not expressly limited to those sustained *by the taxpayer* in his trade or business. These are obviously implicit in the statute. And so it is with the depreciation deduction. Hence it is idle to argue that the statute " means what

[1] " The Federal Income Tax," Columbia University Press, 1921, p. 141; " Income Tax Procedure, 1924," R. H. Montgomery, Ronald Press, p. 1102; " U. S. Income and War Tax Guide, 1924," Kixmiller & Baar, Commerce Clearing House, p. 227; " Some Problems in Depreciation," J. Hugh Jackson, vol. 31, Journal of Accountancy, p. 82; "Auditing Theory and Practice," R. H. Montgomery, Ronald Press, 1922, p. 634; "Accounting—Theory and Practice," Roy B. Kester, Ronald Press, 1917, Vol. II, p. 1202,

it says," for what it says must be read in a sensible light to determine what it means, and as said by Mr. Justice Brandeis in *Washington Southern Co.* v. *Baltimore Co.*, 263 U. S. 629—

To ascertain the true meaning of the rule, the operation and effect of the construction urged must be considered.

We may well recall what Chief Justice Marshall said in *McCulloch* v. *Maryland*, 4 Wheaton 316:

Almost all compositions contain words, which, taken in their rigorous sense, would convey a meaning different from that which is obviously intended. It is essential to just construction, that many words which import something excessive should be understood in a more mitigated sense—in that sense which common usage justifies.

And so when we are told that depreciation is an operating cost and that it represents the consumption of an asset it is not enough. We must ask, *whose* cost, and *whose* asset; and if they are not those of the taxpayer they are of no concern for this purpose.

Our attention is directed to the development of the depreciation allowance in the several revenue statutes beginning with the Corporation Excise Tax Act of 1909 as showing in some way that the Revenue Act of 1918 does not embody the idea that the allowance should be based upon original outlay. The Act of 1909 included the allowance within the loss provision; the 1913 and 1916 Acts repeated this as to corporations and separately stated it as to individuals; the later Acts stated the allowance separately as to both. These statutes, having been enacted at comparatively short intervals, all for purposes of revenue, all to impose a tax based on income, and each in substitution for its predecessor, must be construed *in pari materia* and each in the light of the others. We can not believe that by placing the depreciation deduction in proximity to the loss deduction, Congress intended to characterize the allowance as a loss; or that the failure to tie the two deductions together in the later statutes indicates that depreciation was something other than a loss; or that by tying them together as to corporations and not as to individuals, as in the 1913 Act, the nature of the allowance was intended to be affected. Throughout all of the statutes Congress has intended to allow the deduction, not because it came within one class or another—that is, a loss or an expense—but rather because, irrespective of terminology, it was believed that net income could not fairly be determined without an allowance for that factor which business had commonly come to recognize as depreciation; and as we have above seen that common understanding was that cost or capital outlay was the proper basis.

We are not now deciding the best or most scientific principle of accounting or whether the setting up of a reserve to provide for future expenditures which may reasonably be foreseen is wise. That is not our task. Our investigation into the statements of modern accountancy writers is made only to ascertain whether the cost basis is archaic and not for the purpose of laying down the rule for the determination of taxable income. It is sufficient, therefore, when we say that there is still substantial recognition of the cost basis. It must always be kept in mind that we are applying an income tax law and to that end are seeking to determine this company's net

income as the measure of its just share of the general tax burden. Is there any reason why this taxpayer should withdraw from its gross income the amount in question as not constituting part of its taxable net income? It received it, retained it, and had the complete, absolute, and uncontrolled use of it, without any effect upon its original capital investment. Although it might choose, as it did, to lay aside the amount against the time when it might wish to renew or replace its leased building it had the right equally to choose not to do so. And, whether it did so or not, its original capital remained unimpaired.

Some point is made that since the estimated life of the property is less than the term of the lease it was inevitable that replacement should be made. If that be true, it does not follow that it was the property or capital of the taxpayer that was being exhausted and should be kept intact. Until the replacement is actually made it is the capital of the lessor which is wearing out. The fact that the lessor does not claim any depreciation on its tax returns obviously can not affect the situation of the lessee. The relinquishment of the right by the former does not create a right in the latter. We are here concerned with whether or not the lessee is suffering an exhaustion of its property. The property in question could only be the capital of the lessee either by purchase or gift, and it is apparent that there has been neither. The taxpayer by the promise to pay rent and to fulfill certain other covenants purchased the right to the use and occupation of the premises, together with the right to make improvements and renewals if it saw fit. It made no capital investment until 1917, when it paid a lump sum of $500,000 advance rental, and this it is amortizing. The investment in the building was made by the lessor to the extent of $900,000, and the exhaustion of the building carries with it the disappearance of this capital investment. When its life ends the lessor's investment will be gone, unless the lessee replaces it.

It is said that to deny the allowance in this case is to make the allowance depend on whether the taxpayer invests his capital at the beginning or the end of the life of the property. The fallacy in such an argument rests in the fact that here the taxpayer is not paying for the property either at the beginning or end of its life, the possible payment at the end being, as we have seen, not for the present property but for such new property as the taxpayer then erects. In a proper case, it may well be that although no outlay has been actually made the commitments and obligations of the taxpayer are such as justly to entitle him to the deduction in accordance with the statute. This we are not now called upon to decide because this is not such a case. The arguments of counsel along that ine proceed, as we have said, upon the erroneous premise that the t ixpayer here is committed or obligated to restore the property of the lessor, when in fact it is entirely a matter of the taxpayer's voluntary election. It might save up its earnings for 39 years and then decide to distribute them, sublease the premises for the remainder of the term and merely continue to pay its annual rent to the landlord. In that event, would it be contended that its distribution is a liquidation of original capital, free from surtax to the stockholders? It would seem clear that such a distribution would be a

taxable dividend made out of surplus—a surplus derived in the usual course out of earnings.

The determination of the Commissioner must be approved.