ESTATE OF ERNEST GUSTAV HOFFMAN, DECEASED, WILLIAM D. SPORBORG, AS ADMINISTRATOR, C. T. A., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7914.   Promulgated November 7, 1927.

- The value at March 1, 1913, of certain patents, for the purpose of determining the exhaustion allowance, determined.

*Thomas F. J. Connolly, Esq.,* for the petitioner.
*L. L. Hight, Esq.,* for the respondent.

This proceeding is for the redetermination of deficiencies in income tax for the years 1920 and 1921 in the amounts of $1,590.96 and $106.19, respectively. Petitioner assigns the following errors: (1) That respondent made an error of addition in the amounts of the normal tax and surtax composing the asserted deficiency for the year 1920; (2) that respondent erred in spreading the allowance for exhaustion of the value of two certain patents, as determined by him, over a period of 15 years, for the reason that the patents in question had on March 1, 1913, an unexpired life of approximately $8\frac{2}{3}$ years and $9\frac{5}{12}$ years respectively; (3) that respondent erred in refusing to segregate the amounts of royalties received from the patents as to capital and income in the manner set out in the decree of the Supreme Court of the State of New York dated June 19, 1920; and (4) that the respondent erred in fixing the value of the patents on March 1, 1913, at $16,666.66.

### FINDINGS OF FACT.

The petitioner is the administrator, with the will annexed, of the estate of Ernest Gustav Hoffman, deceased. He resides in the town of Rye, N. Y., and his office at Port Chester, N. Y. Hoffman died

in 1908, possessed, among other things, of two certain patents relating to ball bearings, dated November 8, 1904, and August 6, 1905, respectively. Decedent left a last will and testament in which he created a trust of his entire estate for the benefit of his widow and daughter. The income from the trust was to be paid over to the widow for the support and maintenance of herself and child until the child attained the age of 21 years, when the capital or corpus of the estate was to be divided between them.

Under date of August 1, 1910, the executors of the estate entered into a contract with the Norma Company of America for the manufacture of ball bearings under the patents above mentioned. The licensee agreed to pay a royalty equal to the amount of one cent for each ball bearing manufactured, sold, or used, and guaranteed a minimum annual royalty of $2,500. The term of the contract was coextensive with the remaining life of the patents.

The Supreme Court of the State of New York, at a term held in and for the County of Westchester on June 19, 1920, in a proceeding wherein the administrator of the estate was plaintiff and the beneficiaries under the will were defendants, decreed that the sums received by way of royalties upon agreements permitting the use of the patents in question be treated as partly principal and partly income, to be determined in the following manner: The sum should be ascertained and determined which, invested at the rate of 6 per cent per annum, would produce the sums received from time to time as such royalties, and this amount should be deemed principal and the balance should be deemed income.

The manufacture of ball bearings under the Hoffman patents was commenced in March, 1911, and thereafter they were manufactured in the quantities as follows:

| Calendar year | Number | Calendar year | Number |
|---|---|---|---|
| 1911 | 15,349 | 1914 | 663,157 |
| 1912 | 161,321 | 1915 | 903,955 |
| 1913 | 452,069 | 1916 | 1,112,334 |

The petitioner kept his accounts on the fiscal year basis. During the fiscal year ended March 31, 1912, there was manufactured a total of 27,623 bearings, and the royalty thereon at the rate of one cent each amounted to $276.23. Accordingly, the licensee for that year was required to pay the minimum royalty of $2,500. During the fiscal year ended March 31, 1913, the total number of ball bearings manufactured was 206,336, on which the royalty at one cent each amounted to $2,063.36. For that year also the licensee was required to pay the minimum royalty of $2,500. During the three succeeding fiscal years, the number of bearings manufactured and the royalties paid were as follows:

| Fiscal year ended Mar. 31— | Number of ball bearings manufactured | Royalty paid |
|---|---|---|
| 1914 | 589,304 | $5,893.04 |
| 1915 | 708,684 | 7,086.84 |
| 1916 | 981,784 | 9,817.84 |

A total amount of approximately $92,000 was paid by the licensee to the estate under the contract from March, 1911; to November, 1921, as royalties for use of the Hoffman patents. In 1913, the ball-bearing industry was still in an experimental stage, but shortly thereafter began to develop rapidly. The patents here involved covered valuable improvements and corrected defects in bearings then in use. The first ball bearings manufactured were placed on the market about 10 years prior to that date. At March 1, 1913, one of the Hoffman patents had an unexpired life of approximately 8⅔ years and the other patent had an unexpired life of approximately 9 5/12 years.

The books of the estate were kept on the cash receipts and disbursements basis.

### OPINION.

TRAMMELL: The issues involved in this proceeding are sufficiently set out in our preliminary statement above. The first two issues relating to a mathematical error and the life of the patents after March 1, 1913, have been admitted by the respondent and further reference thereto is unnecessary.

With reference to the third issue, the petitioner contends that the royalties received from the patents involved herein should be allocated in part to income and in part to capital, in the manner provided in the decree of the Supreme Court of the State of New York dated June 19, 1920. The respondent urges that the decision of a state court determining what is income and what is capital as between tenants for years and remainderman can not affect the character of a receipt as income under the laws of the United States.

Royalties, like rent, are inherently income and have been commonly so considered. *Appeal of Nelson Land & Oil Co.*, 3 B. T. A. 315; *Arthur H. Fleming* v. *Commissioner*, 6 B. T. A. 900, *Appeal of Mary E. McCahill*, 2 B. T. A. 875. In *Arthur H. Fleming* v. *Commissioner, supra,* we said:

That royalties from mining ore are income and not the return of capital has been settled ever since the decisions in *Stratton's Independence* v. *Howbert*, 231 U. S. 399; 34 Sup. Ct. 136; and *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503 * * *.

Royalties received from licenses to use patents are no less income than royalties received by lessors of ore deposits. The entire amount

thereof constitutes gross income. The patents were not sold. The licenses merely provided for the right to use the patents and to manufacture articles thereunder. No part of the royalties represents, under the Revenue Act in question, a return of capital. The Revenue Act, however, does make provision for deductions from the royalties received of such amounts during the life of the patents so that their value on March 1, 1913, or their cost if subsequently acquired, is returned to the taxpayer by the time the patents have become exhausted. *Appeal of Union Metal Manufacturing Co.*, 1 B. T. A. 395. Deduction for the exhaustion of the patents has been allowed. It is only by virtue of the deduction by statute that the entire amount thereof is not subjected to tax. *Von Baumbach* v. *Sargent Land Co.*, *supra; Stratton's Independence* v. *Howbert, supra.*

There remains for consideration only the question of the fair value of the patents at March 1, 1913. Petitioner contends that the value of the patents was greatly in excess of that determined by the respondent, and presented the testimony of two witnesses who were qualified by training and experience to express their opinions. One of them testified that in his opinion the value of the patents at the basic date was $60,000, and the other testified to a value of $65,000. The respondent took as the basis for determining the value of the patents, the minimum annual royalty of $2,500, which he capitalized at 15 per cent, and thus fixed the value of $16,666.66.

In determining the value of assets, such as patent rights, the valuation should be based upon the facts known at the time as of which the valuation is being determined. Subsequent earnings can not be used in the determination, unless from past experience or known facts such future earnings might reasonably have been anticipated. *Appeal of Dwight & Lloyd Sintering Co.*, 1 B. T. A. 179.

We are satisfied that the minimum royalty basis, under all the facts and circumstances of this case, is not the proper basis upon which to determine the value. We have evidence as to the superiority of the bearings made under these patents as compared to any in use at the time. The improvements made by these patents largely corrected defects which had existed in bearings made by others. It had been sought for some time to make more perfect and more endurable bearings. The sale of these bearings increased very rapidly from the time their manufacture commenced in March, 1911. For the remaining 9 months of that year 15,349 bearings were manufactured, while for the year 1912 the number increased to 161,321, more than ten times as many. In 1913 the number manufactured increased nearly three times over the number for 1912. There was a constant material increase each year. In 1916 the number reached 1,112,334. The continuing increase in the demand for these improved bearings,

according to the testimony, could be reasonably anticipated on March 1, 1913.

In view of all the evidence, it is our opinion that the patents had a value on March 1, 1913, of $40,000, which amount should be spread over the life of the patents.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by Morris, Murdock, and Siefkin.