Appeal of **CLEVELAND HOME BREW-**     **Docket No. 73.**
**ING CO.**

> Only intangible property paid in for stock is subject to the limitation of 25 per cent of capital stock outstanding provided in section 326 of the Revenue Act of 1918. In conformity with this provision of the statute the disallowance of good will in the computation of invested capital is reduced in the instant case from $85,073.27 to $8,919.55.
>
> Depreciation charges on tangible property made on the books of a taxpayer prior to January 1, 1918, will not, for invested capital purposes, be disturbed without positive evidence that the depreciation actually sustained had not been written off by the taxpayer.
>
> A deduction for depreciation during a taxable year in excess of the amount ordinarily deducted by the taxpayer must be sustained by full and detailed evidence.

Submitted October 14, 1924; decided November 22, 1924.

*Edward J. Brunenkant, Esq.*, for the taxpayer.

*John D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal is taken from a determination of a deficiency in income and profits taxes for 1918 and 1919, in the sums of $16,273.02 and $919.79, respectively. The alleged deficiency is based upon an increase of net income for the year 1918 on account of depreciation claimed and disallowed and upon a decrease of invested capital in both years for a statutory excess of good will and for insufficient depreciation in years prior to 1918.

### FINDINGS OF FACT.

The taxpayer, an Ohio corporation organized in 1907, acquired in that year property theretofore owned by the Beltz Brewing Co. comprising a brewery, full equipment, and a going business. The tangible assets included in the transaction, which was an actual purchase and sale, were of the reasonable value of $362,752.50, and were purchased subject to liabilities of $111,725.05. Payment was made for this property in cash and stock of the Cleveland Home Brewing Co., cash $166,397 and capital stock $178,800. The offer or option upon the acceptance of which the sale was consummated, proposed to convey and there was actually conveyed to Ernst Mueller, the entire property and assets of the Beltz Brewing Co., including the good will of its business. Mueller then transferred to the taxpayer the option so acquired by him for the amounts above set forth. The Board finds from the foregoing that capital stock of the taxpayer was issued for good will and the going business of the Beltz Brewing Co., being intangible property as defined

by section 326 of the Revenue Act of 1918, in an amount computed as follows:

| | |
|---|---:|
| Cash paid for Beltz Brewing Co. property and business_____ | $166, 397. 00 |
| Stock paid for Beltz Brewing Co. property and business_____ | 178, 800. 00 |
| Total paid_____ | 345, 197. 00 |

| | | |
|---|---:|---:|
| Tangible assets acquired_____ | $362, 752. 50 | |
| Less liabilities assumed_____ | 111, 725. 05 | |
| | | 251, 027. 45 |

| | |
|---|---:|
| Value of going business and good will acquired for stock_____ | 94, 169. 55 |

Subsequent to the date of its organization and the acquisition of the property above mentioned the taxpayer carried on the business of brewing beer and selling it in and about the city of Cleveland, Ohio. In or about the year 1919 it changed its product to " near beer " and, with the equipment already in use, began the manufacture of it for sale to the general public. The taxpayer is still in active business.

During all the years from its organization to and including the taxable years 1918 and 1919 the business of the taxpayer was profitable. The net income and dividends paid for each of the full years prior to 1918 were introduced in evidence by the Commissioner through the tax return of taxpayer for 1918, and were as follows:

| | Net Income | Dividends Paid | | Net Income | Dividends Paid |
|---|---:|---:|---|---:|---:|
| 1908_____ | $25, 158. 12 | | 1913_____ | $30, 330. 00 | $15, 345. 00 |
| 1909_____ | 36, 223. 10 | | 1914_____ | 34, 399. 05 | |
| 1910_____ | 44, 608. 05 | $20, 460. 00 | 1915_____ | 37, 504. 67 | 3, 410. 00 |
| 1911_____ | 21, 751. 41 | 20, 460. 00 | 1916_____ | 54, 432. 85 | 13, 640. 00 |
| 1912_____ | 13, 277. 45 | 5, 115. 00 | 1917_____ | 29, 605. 28 | 13, 640. 00 |

During the years above set forth, and before the net income as shown by the books was determined or dividends paid, depreciation was written off in sums varying with the profits of the year but sufficient in the aggregate to cover actual depreciation.

For the taxable year 1918 the Commissioner has determined a deficiency in tax based upon an allowance for depreciation of plant and equipment for the year of $19,791.20, and based upon two adjustments of invested capital, one a reduction of $82,134.34 for alleged insufficient depreciation for years prior to 1918, and one of $85,073.27 for alleged valuation of good will in excess of 25 per cent of capital stock at the beginning of the year.

For the taxable year 1919 the Commissioner has determined a deficiency in tax based upon the above adjustments in invested capital, the first being in the sum of $77,718.79, and the second in the same amount as for the year 1918.

From the determination of the Commissioner as above set forth the taxpayer brings its appeal.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice.

OPINION.

JAMES: The taxpayer bases its appeal upon three alleged errors made by the Commissioner in the determination of its tax. These are:

1. That the Commissioner in computing net income for the year 1918 has denied sufficient depreciation upon plant and equipment and has denied special obsolescence thereon, the amount now in dispute on the item being $24,256.80.

2. That the Commissioner improperly reduced invested capital by increasing the depreciation charge for years prior to 1918 in the sum of $82,134.34 for that year, and $77,718.79 for 1919.

3. That the Commissioner improperly reduced invested capital for each year in the sum of $85,073.27 by excluding alleged excess of intangible property acquired for stock over and above 25 per cent of the total capital stock of the taxpayer.

With respect to the last of the above alleged errors it appears that the examining revenue agent found upon the taxpayer's books an account headed " Good Will " $172,945.89, of which he found that $2,622.62 represented actual cost of corporate organization. Capital stock amounted to $341,000, 25 per cent of which was $85,250. The agent found and the Commissioner determined that the account exceeded the statutory allowance provided in section 326 of the Revenue Act of 1918, and computed the excess as follows:

| | |
|---|---|
| " Good will " account per books | $172,945.89 |
| Less organization expense | 2,622.62 |
| | 170,323.27 |
| Less 25 per cent of capital stock | 85,250.00 |
| " Good will " in excess of statutory limitation | 85,073.27 |

The evidence is undisputed and the Board has found as a fact that the total stock issued for intangible values did not exceed $94,169.55. It is true that the present books of the taxpayer show a " Good Will " account in excess of that amount and in the sum set forth in the report of the revenue agent. But both the agent and the Commissioner appear to have overlooked the fact that the 25 per cent limitation in section 326 applies only to good will or other intangible property acquired for stock of the corporation. Good will otherwise acquired, as for cash, is not subject to this limitation. How the good will account came to be carried at the sum appearing on the books is not disclosed by the record. The record does show the property acquired for stock and that it formed the basis of a purchase and sale at arms' length so far as concerns the tangible property. The Commissioner has introduced the report of the examining revenue agent as his sole evidence. That report is silent on the matter here in question. The taxpayer has met the burden of proof devolving upon it in this branch of the case and is entitled to a recomputation of its invested capital as follows:

| | |
|---|---|
| " Good will " paid in for stock | $94,169.55 |
| Less 25 per cent of capital stock | 85,250.00 |
| Good will in excess of statutory limitation | 8,919.55 |

The first and second errors claimed by the taxpayer to have been made by the Commissioner will be considered together as the facts can best be treated in that manner.

The taxpayer set forth in its petition, but neglected to prove, that from organization to the close of 1917, a period of nearly 11 years, depreciation had actually been taken in the sum of $156,277.79. For the taxable year 1918 it claimed first in its return $72,963.43 and now claims in its petition $44,048. The deduction allowed by the examining agent was $19,791.20, and the net income reported by him was $58,450.85. The taxpayer claims, and the Board has found as a fact, that the depreciation taken by it for the period prior to January 1, 1918, was sufficient. It asks that depreciation at a rate three times the annual rate alleged to be adequate for 11 years— as set forth in its petition—be allowed for the taxable year. In justification of this claim it sets forth the effects of the eighteenth amendment and the act of Congress providing for its enforcement. But its property has not been taken from it; it is even continuing in business. It is here claiming an extraordinary allowance of obsolescence of *tangible property*.

The following table taken from the report of the examining revenue agent shows the computations forming the basis of the above disallowance:

| Brewery | Cost | Add. to 12/31/18 | Rate | Depreciation allowed | Depreciation taken |
|---|---|---|---|---|---|
| Buildings brick | $123,216.10 | $7,631.78 | 2%—Add 2%, ½ year | $2,540.64 | $10,000.00 |
| Equipment | 72,988.11 | 4,395.84 | 7%—Add 7%, ½ year | 5,263.02 | 10,000.00 |
| Cooperage | 14,684.00 | | 10% | 1,468.40 | 9,234.00 |
| Horses, wagons | 16,133.50 | 1,125.00 | 10%—Add 10%, ½ year | 1,670.10 | 5,472.75 |
| Furniture and fixtures | 1,000.00 | | 10%—Add 10%, ½ year | 100.00 | |
| Frame buildings | 36,075.00 | | 5% | 1,803.75 | |
| Bottling works | | 3,341.25 | | | |
| Trucks and autos | 14,444.65 | 4,764.00 | 20%—Add 20%, ½ year | 3,699.51 | 3,341.25 |
| Buildings | 10,889.43 | | 2% | 217.79 | |
| Machinery | 9,646.23 | 6,389.60 | 10%—Add 10%, ½ year | 1,284.10 | 5,000.00 |
| Bottles, boxes | 9,833.88 | | 10% | 983.39 | |
| Brewery signs | 1,400.00 | | 50% | 700.00 | 1,000.00 |
| Extra pumps | 605.00 | | 10% | 60.50 | |
| | 310,915.90 | 27,647.47 | | 19,791.20 | 44,048.00 |

Depreciation charged off _____ $44,048.00
Depreciation allowed _____ 19,791.20

Depreciation disallowed _____ 24,256.80

The $24,256.80 disallowed as a deduction by the Commissioner is made up as follows:

Buildings _____ $5,437.82
Equipment _____ 3,593.09
Cooperage _____ 7,765.60
Horses and wagons _____ 3,802.65
Machinery _____ 3,715.90
Brewery signs _____ 300.00

                                                                            24,615.06
Less extra allowance on trucks and autos _____ 358.26

                                                                            24,256.80

Mr. Mueller in his deposition admitted that the property in question is used and useful in the taxpayer's present business. There is no evidence, other than a decline in the sales of beer just prior to the passage of the eighteenth amendment and the assertion of Mr. Mueller as to what he feared might happen, which even remotely suggests that the property in question was the subject in 1918 of extraordinary depreciation or obsolescence. The allowance for depreciation made by the Commissioner appears to be reasonable and even liberal.

The adjustment of invested capital by the Commissioner wherein he alleges underdepreciation of property for the years 1907 to 1917, inclusive, is in our opinion erroneous. We have found as a fact that adequate depreciation was taken in the years in question. The evidence upon this phase of the case would be more convincing if the taxpayer had proved the allegations of its petition. The examination of Mr. Mueller, however, clearly discloses that depreciation deemed by him to be adequate was deducted from income, irregularly to be sure, but in manifest good faith and at a time when laws taxing income either did not exist or imposed rates of tax too low to be an important factor in determining business policy. Moreover, earnings, amounts added to surplus and dividends over that period, as shown in the findings of fact, were sufficient, after depreciation was deducted, to indicate that the executive officers were under no financial pressure to minimize the depreciation charge.

The Commissioner relies upon the burden of proof, which rests upon the taxpayer, and contends that the irregularity with which depreciation appears to have been deducted from year to year, as admitted by Mr. Mueller, and its assumed erroneous basis are sufficient grounds upon which to disregard his testimony as not overcoming the burden resting upon the taxpayer for the establishment of a *prima facie* case.

Depreciation, we have already said, is a question of fact. Congress has allowed taxpayers " a reasonable allowance for * * * wear and tear of property used in the trade or business " as a deduction from income, to make whole their capital investments before levying a tax upon that income. The Commissioner in this case asks us to accept a readjustment of taxpayer's invested capital upon a mere assumption that the property of *this taxpayer* was reasonably depreciable at certain arbitrary rates and in equal annual amounts over a period of 11 *completed* years. No evidence is offered that the alleged depreciation has actually occurred. None is even offered that property of the kind here in question usually deteriorates at approximately the rates used in the computations of the examining agent. Upon the record so made, we must sustain the position of the taxpayer.

Much of the argument of this case was centered about a certain ruling of the Commissioner's office known as A. R. M. 106. This memorandum of the Committee on Appeals and Review states a rule of policy in the Bureau of Internal Revenue. It is no part of the duty of this Board, nor has it the right, to decide in any manner questions of policy in the administration of the office of the Commissioner. It is the duty of this Board to decide appeals filed by taxpayers upon the facts and the law as applied to their cases. In this

case we reach the same result as would have been reached by the Commissioner had he considered that A. R. M. 106 should be applied to it. In so doing we are not, as the taxpayer asked us to do, applying that memorandum. We have found in this case the facts which are assumed by A. R. M. 106 to be the usual facts in the cases of most taxpayers. A. R. M. 106 states an administrative rule of general application. Our decision here interprets and applies the facts only of this case.

Final determination of this appeal as to the amount of the deficiency in tax, if any, which may be assessed by the Commissioner will be entered upon motion of either party on seven days' notice to the other. In this determination the tax for the year 1918 will be computed upon the net income as determined by the Commissioner and upon the invested capital as determined by him, adjusted by the substitution in the disallowance for good will of the sum of $8,919.55 for the sum of $85,073.27, and by the addition to invested capital of the sum of $82,134.34 on account of alleged depreciation sustained prior to the taxable year but not approved herein. For the year 1919, the tax will be computed upon the net income as determined by the Commissioner and upon the invested capital as determined by him adjusted by the substitution of the sum of $8,919.55 for the sum of $85,073.27 in the disallowance for good will, and by the addition of the sum of $77,718.79 on account of alleged depreciation sustained prior to the taxable year but not approved herein, with a further adjustment on account of income and excess profits tax for the year 1918 after the correct computation thereof as hereinbefore provided.