## APPEAL OF CITY NATIONAL BANK.

Docket No. 1792.  Submitted July 18, 1925.  Decided September 28, 1925.

1. Where no sufficient depreciation, based upon the probable useful life of depreciable assets, has been taken by the taxpayer for years prior to the taxable year in question there is no presumption that the earned surplus shown on taxpayer's books of account is correct for the purpose of computing invested capital.  Decisions in the *Appeals of Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Russell Milling Co.*, 1 B. T. A. 194, and *Rub-No-More Co.*, 1 B. T. A. 228, considered and distinguished.

2. In computing earned surplus, unrealized appreciation can not be used to offset depreciation sustained on depreciable assets.  The present worth of the assets for the taxable year in question is not the basis for computing earned surplus.

*William A. Bowen, Esq.*, for the taxpayer.
*W. Frank Gibbs, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

The taxpayer appeals from determinations of deficiencies in income and profits taxes amounting to $4,668.21 for the calendar years 1919, 1920, and 1921.

### FINDINGS OF FACT.

During the years 1919, 1920, and 1921 the taxpayer was a corporation organized under the banking laws of the United States, with its principal place of business at Long Beach, Calif.  At the close of business on June 30, 1922, the taxpayer merged with the Pacific Southwest Trust & Savings Bank, a California corporation.  Since that date no business has been transacted under the name of the taxpayer.  This appeal is brought by the Pacific Southwest Trust & Savings Bank, the legal successor to the taxpayer.

As of December 31, 1918, the books of the taxpayer showed purchases of furniture and fixtures from the date of its organization in 1907 of a total cost of $11,320.81.  Approximately one-half of these were purchased in 1907 and 1908 and the greater part of the balance in 1912 and 1913, with minor purchases in other years.  During this period it had, at irregular intervals and principally in 1918, charged off the sum of $1,604.38, but whether as depreciation or for other cause does not appear.  During the same period it had expended $1,566.81 for additional furniture and fixtures which had been charged to expense.  It had also transferred $5,716.43 on its books from its furniture and fixtures account to its building account.  On December 31, 1918, the furniture and fixtures account as carried on the books shows a balance of $4,000.  The Commissioner has restored to this account said sum of $5,716.43 and has computed de-

preciation on all furniture and fixtures (including those charged by the taxpayer to expense) from the date of purchase at the rate of 10 per cent per annum, arriving at $2,726.65 for this account as of December 31, 1918.

In 1907 and 1908 taxpayer erected a three-story brick building at a total cost, with additions to December 31, 1918, of $22,529.20. No part of this cost was ever charged off except the sum of $45.63 in 1916. Whether this was for depreciation or for some other purpose does not appear. Taxpayer also carried in this account the sum of $24,000, representing the cost of the land upon which the building was erected, and the sum of $5,716.43 transferred from furniture and fixtures. On December 31, 1918, the balance of this account, as shown by taxpayer's books, was $52,200, or, after eliminating the cost of the land and the unexplained transfer from furniture and fixtures, $22,483.57. The Commissioner has computed depreciation on the building at the rate of 2½ per cent per annum, arriving at $16,101.79 for the building account, exclusive of the land, as of December 31, 1918.

By reason of such depreciation adjustments, taxpayer's earned surplus, as of December 31, 1918, has been reduced by the Commissioner, in computing invested capital, by the sum of $13,371.56.

For the years in question, taxpayer claimed depreciation on furniture and fixtures at 10 per cent and on the building at 5 per cent; the Commissioner allowed 10 per cent and 2½ per cent, respectively. For the years 1909 to 1917, inclusive, adjustment of Federal income taxes was made upon an audit of taxpayer's books, which adjustment allowed depreciation at these same rates. As a result of such audit, taxpayer filed claims for refund of taxes for those years, which were allowed.

#### DECISION.

The determinations of the Commissioner are approved.

#### OPINION.

PHILLIPS: Taxpayer relies upon the decisions of this Board in the *Appeals of Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Russell Milling Co.*, 1 B. T. A. 194; and *Rub-No-More Co.*, 1 B. T. A. 228. In each of those cases there was evidence that taxpayer had charged off depreciation in prior years and that such depreciation was substantially correct; and, as between the depreciation charged by the taxpayer and that claimed by the Commissioner, this Board considered taxpayer's contention as more nearly representing the correct facts and refused to disturb the surplus shown on the taxpayer's books. In this appeal we have an entirely different situation. No

depreciation whatever was taken on the building, while on furniture and fixtures the depreciation from 1907 to 1918, including additions charged to expense, averaged 3 per cent yearly. Upon its face such depreciation is inadequate, and taxpayer must have realized this fact, for in 1916 it transferred $5,716.43 from furniture and fixtures account to building account, thereby writing down its furniture and fixtures account to $5,000. In this appeal there are also the further considerations that a 10 per cent rate of depreciation on this same account was claimed by the taxpayer and allowed in the years involved in this appeal and that taxpayer filed claims for refund of taxes paid in prior years on the ground that inadequate depreciation had been charged off in such years and such claims were allowed. These same considerations apply to the building, upon which no depreciation was taken and which was appreciated on the books in 1916 by the transfer of $5,716.43 from furniture and fixtures account. For the years involved in this appeal taxpayer claimed depreciation on the building at the rate of 5 per cent, which was reduced by the Commissioner to 2½ per cent, the same rate applied in computing depreciation for prior years. Assuming, as we must, that 10 per cent and 2½ per cent were proper rates of depreciation on the furniture and fixtures, and on the building, respectively, we must sustain the action of the Commissioner in adjusting the earned surplus of taxpayer to allow for such depreciation.

Taxpayer urges further that if the actual depreciation caused by use is offset by appreciation caused by market conditions, so that the value at which the assets are carried on the books represents their actual value, the surplus of the taxpayer remains unaffected; and that in such case the Commissioner would not be justified in changing taxpayer's surplus by writing off depreciation. In support of this contention, taxpayer attempted to show that all of its assets had a value from 1919 to 1921, inclusive, equal to that at which they were carried on its books. The evidence offered was indefinite and general in character, consisting mainly of conclusions on the part of the witnesses without any effort to describe the assets in question. But even though we were to consider that the taxpayer had fully proven the value of its furniture, fixtures, and building from 1919 to 1921, inclusive, to be equal to the amount at which they were carried on its books, we do not conceive that taxpayer's contention is sound.

Invested capital includes earned surplus. Earned surplus is nothing more than the accumulated, undistributed earnings of prior years. For income-tax purposes such earnings do not include unrealized appreciation of assets. But in computing such earnings, depreciation actually sustained must be taken as a deduction, exactly as all other expenses of the business are taken. Taxpayer seeks to offset such depreciation against unrealized appreciation.

This can not be done unless unrealized appreciation of assets may be included as earned surplus. It is a well-settled principle of the income tax laws that appreciation of assets is not income until there is a sale or other disposition thereof, and we do not conceive that there can be any "earned" profit or surplus from such appreciation prior to the time that it becomes income for the purposes of the tax law. *La Belle Iron Works* v. *United States*, 256 U. S. 377.

ARUNDELL not participating.