MARIGOLD GARDEN CO. AND RANDOLPH HOTEL CO., PETITIONERS, v.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1580.    Promulgated March 2, 1927.

1. Where the usefulness of business property is lost to a tax-
payer through the operation of the prohibition law, and the prop-
erty is neither abandoned nor sold but is placed in storage, the
cost thereof is not deductible as a loss.

2. Earned surplus may not be reduced by the difference between
the depreciation reserve shown on taxpayer's books and the
amount of accumulated depreciation for prior years computed at
a fixed percentage on a straight-line basis, where it is not shown
that the books do not reflect depreciation actually sustained or
that the property had a value or was in a condition other than
that shown by the books.

3. Depreciation on personal property used in operation of a
hotel computed on basis of 10 per cent of book value at beginning
of year after excluding amount of write-up made to conform books
to detailed physical appraisal made in prior year, and on basis of
5 per cent of cost of additions during the year.

*Edward R. Johnston*, Esq., for the petitioners.
*W. H. Lawder*, Esq., for the respondent.

Deficiency for 1919 of $8,384.56. After the concession by respon-
dent of errors in the determination, there are left in issue: (1) The
disallowance of a deduction of $1,710.07 loss in respect of bar glass
made valueless by prohibition, (2) the disallowance in part of
deduction for exhaustion, and (3) the charging of additional ac-
cumulated exhaustion of property for prior years against earned
surplus and thus reducing invested capital.

FINDINGS OF FACT.

Petitioners are Illinois corporations, organized in 1896, with their
principal offices at Chicago. The Marigold Garden Co. conducted
a beer garden and amusement park, and the Randolph Hotel Co.
conducted a hotel and restaurant. Both maintained bars and sold
intoxicating liquors until the War Time Prohibition Act became
effective June 30, 1919.

Before prohibition one of the principal sources of income of the
Marigold Garden Co. was the sale of liquor. It carried a consider-
able quantity of glassware for the conduct of this part of its busi-
ness. Some of this, consisting of bar steins, wine glasses and fancy
goblets, mostly imported, was useful only in serving certain alcoholic
drinks. The book value of all of the glassware, at January 1, 1919,
was $4,448.84. During the year 1919 the sale of alcoholic drinks
was discontinued and the glassware which was not suitable for other
purposes became useless to petitioner. Some of it was stored and

not thereafter used. The cost of this was $1,710.07. Some has been given away. None has ever been sold. The amount of $1,710.07 was deducted as a loss in 1919, and the deduction has been disallowed by the Commissioner.

From the date of its organization until 1915, the books of account of the Randolph Hotel Co. were kept by one of its executive officers. Annually during this period there was charged off as depreciation of personal property such amounts as in the opinion of the officers of the company were fair and reasonable. The amounts so charged off were not determined upon any definite basis or by any particular method of calculation, but represented the best judgment of the officers of the company as to the wear, tear, and exhaustion actually sustained. During the same period the cost of renewing the equipment of the hotel, such as curtains, carpets, chairs and other furniture, was charged to repairs and treated as expense, except where the replacements were extensive. Subsequent to 1915 the books of account were kept under the supervision and direction of certified public accountants, and the company charged off such depreciation of its personal property as the accountants advised was proper.

In 1916 a detailed physical appraisal of the personal property of the Randolph Hotel Co. was made by an appraisal company. The values set out in the appraisal report were taken up on the books of account, and the several personal property accounts were readjusted to reflect the values established by the appraisal. The taking up on the books of the appraisal values resulted in no change in the real property accounts and in an increase of $13,420.99 in the aggregate of the personal property accounts. At the same time the depreciation reserve was credited with the sum of $13,420.99. Prior to taking up the appraisal values the books showed personal property $100,835.25 and building $131,687.63, and the reserve for depreciation stood at $97,727.67. After taking up the appraisal values, personal property appeared on the books in the amount of $114,256.24, and building remained unchanged at $131,687.63. The total reserves for depreciation stood at $111,148.66, of which $31,001.71 was carried as depreciation reserve for furniture, fixtures and equipment, and $80,146.95 as depreciation reserve for building.

Between the date in 1916 of the adjustments referred to above and December 31, 1918, the books show additions to personal property accounts of $27,746.25 and to building accounts of $16,559.71 and additions to the depreciation reserve for furniture, fixtures and equipment of $30,998.29, and depreciation reserve for building of $51,853.05. At January 1, 1919, the personal property appeared on the books in the aggregate amount of $142,002.49, which included an erroneous charge of $9,000 representing the cost of building im-

provements, and the depreciation reserve for furniture, fixtures and equipment stood at $62,000. At the same date the building appeared on the books at a value of $148,247.34, and the depreciation reserve for building stood at $132,000.

The Commissioner, using a fixed percentage basis, computed the depreciation on personal property for all years from 1897 to 1918, inclusive, and, assuming that certain assets included in the personal property accounts had been exhausted by depreciation, determined that the amount at which the personal property should be included in invested capital for the year 1919 was less than the value at which such property was carried on the books of account after deducting the erroneous charge of $9,000 previously referred to.

In the return which the petitioners filed for the year under consideration, a deduction in the amount of $18,000 was claimed as depreciation on the personal property of the Randolph Hotel Co. The amount of this deduction is greater than 10 per cent of the value at which this property was carried on the books less the erroneous charge to personal property accounts of $9,000. The total cost of additional personal property acquired during the year under consideration was $2,941.94. The cost of bar equipment, carried in the personal property accounts, charged off during the year, was $3,352. Of the total deduction claimed, the Commissioner has allowed the sum of $8,162.14, and disallowed the remainder as excessive.

OPINION.

STERNHAGEN: The respondent concedes that his determination of net income included a duplicate disallowance of one item and hence that his determined net income should be reduced by $1,710.07, and also that his determined invested capital should be increased by $4,289.63.

May the petitioner deduct as a loss the $1,710.07 cost of glassware which prohibition made useless to it in its business but which it kept in storage? It was not abandoned, for petitioner has it in its exclusive possession, where, should an occasion arise, it may call it into use. It was not sold, and it does not appear whether any effort was made to sell. The evidence is only that it became useless to petitioners and was stored.

In considering the principle, the particular cause of the claimed loss matters little, if at all. Uselessness to a taxpayer does not determine a deductible loss any more when attributable to a statutory prohibition than when attributable to any other extraneous cause over which the owner has no control. A change in style or market, or an exhaustion of the supply of raw materials for manufacture may destroy the utility of equipment just as effectually as the intervention of the law, and the detriment to the owner may be just as great.

It seems clear that property is not *ipso facto* lost to a taxpayer because it is no longer useful to him. Ownership and possession still exist, and in some cases value may not wholly disappear. Value and usefulness are not necessarily interdependent, even though they very commonly look to each other for support. The want of either does not make certain the absence of the other. It should be kept in mind that the considerations in ascertaining net income must always be expressed in money and that all the factors relied upon must be translated into terms of money. Use is only significant to the extent that it is susceptible of such expression. No one would urge that an income deduction may be claimed because a fixture or tool proves less useful than expected when the purchase was made. Until the investment is converted into terms of money by sale or other disposition or its worthlessness otherwise demonstrated, there is neither loss nor gain and income is neither greater nor less.

So when we put aside the legislative cause of petitioners' misfortune, and find further that the evidence shows only that the glass could no longer be used by petitioner in its business, we are still far removed from the establishment of such a loss as offsets income. It is not necessary to consider whether we should be brought closer if no sale or disposition could have been made after reasonable effort, for there is no evidence of an effort; and voluntary storage is not a final disposition. The respondent is on this point sustained.

The respondent, using a fixed-percentage basis and applying the straight-line theory of depreciation, has recomputed the depreciation on the personal property of the Randolph Hotel Co. for all years from 1897 to 1918, inclusive, and has determined that the total accumulated depreciation is in excess of the amount thereof shown in the depreciation reserve on the books of account. This has reduced earned surplus on account of alleged inadequate depreciation charged off in prior years.

From 1897 to 1915, during which period the books of the company were kept by one of its executive officers, the company had not accounted for depreciation at constant rates, nor according to any particular method of calculation. Such amounts were charged off as in the well considered opinion of its officers were sufficient to take care of the wear, tear and exhaustion actually sustained. They also charged to expense certain items which might properly have been capitalized. After 1915, when the books were kept under the supervision and direction of certified public accountants, such depreciation was charged off as the accountants advised was proper. The appraisal of 1916 indicated a higher value than that shown on the books. There is no evidence other than the result of a straight-line calculation to show that the depreciation on the books did not represent the actual depreciation sustained or that the

property of the company had a value or was in a condition other than that shown by its books. The issue is controlled by *Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Russell Milling Co.*, 1 B. T. A. 194, and *Rub-No-More Co.*, 1 B. T. A. 228, and the Commissioner's action in reducing the earned surplus on account of alleged inadequate depreciation charged off in prior years is in error.

In the return which the petitioners filed for the year under consideration, a deduction in the amount of $18,000 was claimed as depreciation on the personal property of the Randolph Hotel Co. Of the total deduction claimed, the Commissioner allowed the sum of $8,162.14, and disallowed the balance. The Commissioner's allowance appears to have been computed upon the basis of 10 per cent of the book value of the personal property after deducting therefrom the book value of certain items which, under the method used by him in computing the accumulated depreciation reserve for prior years, he treated as exhausted by depreciation. The petitioners do not dispute the rate per cent which the Commissioner has used, but contend that the basis to which it should be applied is the book value of the personal property at January 1, 1919, after deducting the erroneous charge of $9,000 to the personal property accounts, with an additional allowance for additions made during the year computed on the basis of 5 per cent of the cost thereof. The total allowance contended for by the petitioners is $13,447.34.

The book value of the personal property, after eliminating the erroneous charge of $9,000 described in the findings of fact, at January 1, 1919, was $133,002.49, and the cost of additions made during the year was $2,941.94. To apply the rates of 10 per cent and 5 per cent, respectively, to these amounts would result in a sum which the petitioners contend is a proper allowance. However, it will be noted from the findings of fact that the corrected book value of $133,002.49 includes a write up of $13,420.99 in the personal property accounts resulting from taking into the books of account the appraisal values. This amount should be excluded. Deducting this item of $13,420.99 from the book value of $133,002.49, the result is $119,581.50; and applying to this basis the rate of 10 per cent ($11,958.15) and a rate of 5 per cent to the cost ($2,941.94) of additions made during the year ($147.10), the petitioners are entitled to a deduction of $12,105.25 for depreciation of the personal property of the Randolph Hotel Co. The deficiency should be redetermined by (1) making the adjustments conceded by respondent, (2) restoring to surplus the depreciation erroneously assumed to have occurred in prior years, and (3) recomputing the current depreciation as indicated.

*Judgment will be entered on 15 days' notice, under Rule 50.*

TRAMMELL and TRUSSELL dissent.