MORAINE HOTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13074, 22317, 26899. Promulgated March 18, 1929.

*Fred D. Silber, Esq.,* for the petitioner.
*James L. Backstrom, Esq.,* for the respondent.

912

OPINION.

SIEFKIN: Respecting the respondent's reduction of petitioner's surplus due to setting up a reserve for depreciation for years prior to 1917, the essential facts to the controversy lend themselves to brief restatement. To the close of 1916 petitioner had never taken any depreciation on its books, excepting a charge-off as of January 1, 1913, in an amount equal to 10 per cent of its asset account. In such prior years it had, however, charged all replacements and repairs to expense. In addition to thus offsetting depreciation petitioner had, during the years 1909 to 1916, inclusive, claimed and was allowed depreciation deductions aggregating $31,390.29, which were never charged off on the books. The respondent set this amount up as a reserve for depreciation. Petitioner alleges such action was erroneous as depreciation sustained was adequately offset by charging to expense the cost of replacements and repairs.

Petitioner earnestly urges that its books are presumed to be correct and that the respondent must bear the burden of proving the propriety of his action in setting up the reserve in disregard of book entries, citing and relying on *Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Russell Milling Co.*, 1 B. T. A. 194; *Rub-No-More Co.*, 1 B. T. A. 228; *Hamilton Manufacturing Co.*, 3 B. T. A. 1045; *Marigold Garden Co.*, 6 B. T. A. 368; *Western Star Milling Co.*, 5 B. T. A. 109; and *Welsh Packing Co.*, 9 B. T. A. 1169.

We think the cases cited fall far short of applying the rule which, it is claimed, they establish. A similar contention has been made heretofore in a number of cases and has been rejected by us in unmistakable terms. In *Walnut Creek Milling Co.*, 3 B. T. A. 558, we affirmed such an adjustment made by the Commissioner in the absence of evidence and pointed out that a taxpayer who challenges the adjustment must produce evidence. In *Lexington Brewing Co.*, 8 B. T. A. 755, we said:

> The petitioner can not rebut the prima facie case by the mere production in evidence of statements setting forth what the books show as to amounts charged off in prior years. As we stated in *Appeal of Mandel Brothers*, 4 B. T. A. 341, 355, "A line of reasoning which concluded that the presumption of the correctness of the Commissioner's determination is rebutted by the correctness of the very evidence which the Commissioner examined and found to reflect an unreasonable allowance and so found not from the books themselves, but from the surrounding circumstances, would be most peculiar." And in *Union Paving Co.* v. *Commissioner*, 6 B. T. A. 527, we said: "In every appeal in which the Board has reversed the action of the Commissioner on issues similar to this, the petitioner has proved that the amount of depreciation written off was, in view of all the facts, a reasonable allowance for the exhaustion, wear and tear of assets." There is no evidence upon which we can base findings of fact adverse to the determination of the Commissioner.

Other cases in which we have approved such adjustment in the absence of evidence include *City National Bank*, 2 B. T. A. 623; *Varley Duplex Magnet Co.*, 4 B. T. A. 1; *Champion Coated Paper Co.*, 10 B. T. A. 433.

We have in a number of cases held that like any other fact found by the respondent it is prima facie correct in the absence of evidence tending to show otherwise. *Union Terminal Cold Storage Co.*, 4 B. T. A. 264; *Werner & Werner Clothing & Furnishing Goods Co.*, 9 B. T. A. 69; *Champion Coated Paper Co.*, supra; *C. W. Hull*, 10 B. T. A. 614; *Pacific Coast Pipe Co.*, 11 B. T. A. 1329; *Mollohon Manufacturing Co.*, 13 B. T. A. 952.

On the other hand, in a number of cases, where the taxpayer had introduced evidence tending to show that depreciation had been considered in prior years and allowances, which apparently were approximately adequate, were made by charges to depreciation or the equivalent thereof, we have refused to disturb such allowances without affirmative evidence from the Commissioner, *Albia Box & Paper Co.*, 4 B. T. A. 1184; *Marigold Garden Co.*, supra; *Werner & Werner Clothing & Furnishing Co.*, supra. To the same effect *Haugh & Keenan Storage & Transfer Co.* v. *Heiner*, 20 Fed. (2d) 921. That, of course, is very different from saying the burden of proof is on the Commissioner. It amounts only to requiring the Commissioner to assume the ordinary burden of going forward with the evidence when that burden is shifted to him by the production of evidence overcom-

ing the prima facie correctness of his determination and tending to show that depreciation allowances made by the taxpayers were adequate. Our consistent refusal to accept the result of a computation by the Commissioner on a straight line basis as warranting his action where the evidence has overcome his prima facie case is a matter of weighing the evidence, and has nothing to do with the burden of proof. See *Otis Steel Co.*, 6 B. T. A. 358, and *Northwestern States Portland Cement Co.*, 7 B. T. A. 835, as well as the cases last cited above.

We have consistently held depreciation to be a matter of fact. Proof of the books is proof only that depreciation was taken in the amounts thus shown, and such evidence must be supplemented by proof of the adequacy of such amounts in their relation to depreciation sustained. See *C. W. Hull, supra,* and *Lexington Brewing Co., supra,* in which we held proof of depreciation and its equivalent as shown by petitioner's books was not sufficient to overcome the prima facie correctness of respondent's determination.

In the instant case, then, respondent's determination is prima facie correct. The petitioner has the burden of showing that determination to be erroneous, i. e., of proving the depreciation in fact sustained was in some amount other than that fixed by the respondent. It attempted to prove the amount shown by the books was adequate and that, therefore, the adjustment thereto should not have been made. The fact that it had currently claimed depreciation in prior years in the amount determined by the respondent, instead of that shown by the books, handicaps the petitioner at the outset, as such fact is pertinent and weighty, though not conclusive, evidence of the amount of depreciation actually sustained. That is, petitioner is now attempting to show that the depreciation deducted was excessive to the extent it exceeded the amount recorded on the books, despite the fact that the deductions, presumptively, represent petitioner's best judgment currently exercised during the years under discussion.

The evidence of record tends to confirm rather than overcome the action complained of. In drafting the findings of fact upon this point full credence has been given the testimony of Cushing and the records, produced largely by the taxpayer. Cushing's testimony is that annual depreciation sustained after 1907 amounted to 15 per cent. That, of course, means that the assets would be fully depreciated over a seven-year period. Accordingly, assets purchased prior to 1910 would be fully depreciated by the close of 1916, and may, therefore, be disregarded in determining the undepreciated asset balance as of the close of 1916. The undepreciated balance as of 1916 may be roughly computed as follows:

| Year | Replacements | Additions | Total | Annual depreciation at 15% | Accumulated depreciation (to 1916) | Undepreciated balance Dec. 31, 1916 |
|---|---|---|---|---|---|---|
| 1910 | $10,000.00 | $16,871.06 | $26,871.06 | $4,030.66 | $24,183.96 | $2,687.10 |
| 1911 | 5,417.58 | 7,926.94 | 13,344.52 | 2,001.67 | 10,008.39 | 3,336.13 |
| 1912 | 7,183.04 | 4,892.88 | 12,075.92 | 1,811.39 | 7,245.56 | 4,830.36 |
| 1913 | 3,362.99 | 1,444.68 | 4,807.67 | 721.15 | 2,163.45 | 1,644.22 |
| 1914 | 3,832.57 | 229.88 | 4,062.45 | 609.37 | 1,218.73 | 2,843.72 |
| 1915 | 5,066.99 | 488.92 | 5,066.99 | 833.39 | 833.39 | 4,233.66 |
| 1916 | 5,200.02 | 961.49 | 6,161.51 | | | 6,161.51 |
| | 40,063.19 | 32,815.85 | 72,390.12 | 10,007.63 | 45,653.48 | 25,736.70 |

The above computation is inaccurate in that it makes no allowance in any year for depreciation of assets purchased within that year, but such error is in favor of the petitioner. The undepreciated balance thus reached is considerably less than the book balance minus the reserve set up by the respondent. The computation likewise disregards the $7,773.33 depreciation charged off on the books as of January 1, 1913. The probability that such charge-off had to do in large part at least with assets purchased prior to 1910 need hardly be pointed out. However, even if that charge-off be entirely restored to the asset balance, the result would be less than the balance allowed by the respondent.

Petitioner urges that its practice of charging off the cost of all repairs to expense also was equivalent to taking depreciation or served to compensate for failure to do so. The record is silent as to the extent of capital repairs or of the portion of such total repair costs which is properly allocable to capital account. Without such fact we are unable to determine that any of such costs should be added to the 1916 asset balance. It follows that the prima facie correctness of respondent's determination has not been overcome. The setting up of a reserve is affirmed.

In reaching such conclusion we have not overlooked the fact that an appraisal made in 1906 showed the replacement value of the assets at that time to be greater than the then asset balance. Aside from serious objections as to the weight of such evidence, it proved nothing, due to the assets concerned having been fully depreciated before the close of 1916. Nor have we overlooked petitioner's contention that, the statute of limitations having run against such prior years, the respondent may not examine or reopen the records pertaining thereto. The statute relied upon imposes limitations only upon the assessment and collection of taxes. It does not purport to relate to examinations or investigations of years past to ascertain the correct tax liability of years for which assessment and collection is not yet barred.

There remains the question whether petitioner is entitled to special assessment for the years 1920 and 1921. The grounds alleged are

(1) low salary paid Fred W. Cushing, president and manager; (2) advantageous rental terms; (3) good will not reflected in invested capital, and (4) invested capital can not be determined because capital items erroneously charged to expense in prior years can not now be segregated from items properly charged to expense.

There is some evidence tending to show that Cushing's salary was below a fair compensation. On the other hand the facts given us for determining what a fair salary would be deal only with the salary paid to an assistant and an offer made to him to go elsewhere. It must also be borne in mind that Cushing had under him a first-class assistant. Also, he took an annual vacation of about three months which might well affect adversely the value of his services and be reflected in his salary allowance if it were fixed by a stranger in interest. On the whole we are unable to find as a matter of fact that Cushing's salary was below a fair figure.

Nor is the evidence satisfactory as to the alleged low rent. Petitioner had the burden of keeping up the building, at least in part, which, according to Cushing's estimate, required an expenditure of $5,000 annually. It paid a yearly rental of $35,000 and Cushing estimated a fair rental to be between $40,000 and $50,000 per year. If the repair costs be added to the rent paid, the total rental would equal the $40,000 estimate, and we have no reason to believe that such addition should not be made.

No evidence was introduced respecting the other two grounds alleged. There is little in the record indicating any substantial good will asset or its value, if any. We have, due to lack of proof permitting a segregation of capital expense items, rejected petitioner's contention that replacement and repairs offset depreciation sustained. There is no direct evidence upon the point and it does not necessarily follow that invested capital could not be determined because of inability to so segregate, as failure of proof and impossibility of proof are not synonymous.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

MILLIKEN, concurring in the result: I concur in the result reached in this case with respect to the depreciation reserve for invested capital purposes. I am of the opinion, however, that too narrow an interpretation has been placed on the cases of *Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Russell Milling Co.*, 1 B. T. A. 194; *Rub-No-More Co.*, 1 B. T. A. 228; *City National Bank*, 2 B. T. A. 623; *Marigold Garden Co.*, 6 B. T. A. 368.

PHILLIPS concurs in the above.